UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JT IP HOLDING, LLC, and | * | |
| JEFFREY S. ELDREDGE, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 20-cv-10433-IT |
| | * | |
| THOMAS FLORENCE, FLOPACK, LLC, | * | |
| and, KIMBERLY PERRY, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 1, 2020

TALWANI, D.J.

Before the court is Defendants Thomas Florence, FloPack, LLC, and Kimberly Perry's
Motion to Dismiss [#27]. For the reasons set forth below, Defendants' motion is DENIED IN
PART and GRANTED IN PART.

I.    **Facts Alleged in the Complaint**

In 2017, Plaintiff Jeffrey S. Eldredge and Defendant Thomas Florence formed JT IP
Holding, LLC ("JT IP") to develop and market several products that relate to water management
devices. Am. Compl. ¶ 12 [#22]; Am. Compl., Ex. D, JT IP Operating Agreement 5 [#22-5].
Eldredge and Florence were both members and managers of JT IP and held 50% voting interests
in any and all matters relating to JT IP. Id. ¶ 14. JT IP's Operating Agreement initially called for
Eldredge to hold a 1/3 ownership stake and Florence to hold a 2/3 ownership stake, with
Eldredge contributing $50,000 in cash and Florence contributing $100,000 in sweat equity and

payment of half of JT IP's bills and costs. Id. ¶¶ 13, 17. Florence also promised to transfer several trademarks to JT IP as part of his initial contribution, but failed to do so. Id. ¶¶ 18–23.

Eldredge alleges that during the course of their dealings in JT IP, he and Florence worked together to improve upon an invention that Florence had previously patented. Id. ¶¶ 33–37. On January 6, 2018, Florence applied to the United States Patent and Trademark Office ("USPTO") for a patent for this new improvement and simultaneously assigned the patent application to JT IP. Id. ¶¶ 43, 45 (citing Ex. E, Patent Application [#22-6]; Ex. G, Patent Assignment [#22-8]). The only inventor listed on the patent application is Florence. Id. ¶ 46. Florence represented to Eldredge that his work on the invention did not warrant Eldredge being listed as an inventor and that he did not have to be listed as an inventor to protect his interests in the Patent. Id. ¶ 47. On July 30, 2019, the USPTO issued U.S. Patent No. 10,364,563 (the '563 Patent) to Florence for the invention. Id. ¶ 9.

On October 1, 2019, Florence filed a purported assignment of the '563 Patent to Defendant FloPack, LLC (FloPack). Id. ¶ 71. FloPack is a Massachusetts company, formed in October 2019, with a principal place of business in Massachusetts. Id. ¶¶ 4, 77. Kimberly Perry is an individual residing in Massachusetts, Florence's daughter, and FloPack's Member and only Manager. Id. ¶¶ 5, 77.[1] Eldredge was not made aware of this assignment and the assignment was not approved by Eldredge as required by the JT IP Operating Agreement. Id. ¶¶ 71–74.

In November 2019, after the '563 Patent was allegedly assigned to FloPack, Eldredge and Florence met, accompanied by Perry, to discuss the JT IP business and the ownership of the '563 Patent. Id. ¶ 68. At the meeting, Florence denied that Eldredge had any role in the invention and

---

[1] FloPack's principal place of business shares the same address as Florence's residence. See Am. Compl. ¶¶ 3, 4, 77. [#22].

declined to discuss the assignment of the '563 Patent to JT IP. Id. ¶ 70. At the time of the meeting, Eldredge was still not aware that Florence had already purportedly assigned the '563 Patent to FloPack. Id. ¶ 71.

## II.   Legal Standard

To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). Although the court ordinarily only considers the complaint's plausible factual allegations on a motion to dismiss, the First Circuit has recognized a narrow exception to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the parties do not dispute the authenticity of several of the documents attached to the complaint, including JT IP Holding LLC's Operating Agreement [#22-5].

## III.   Discussion

Defendants make six arguments in their motion to dismiss: (A) that all derivative claims should be barred, (B) that Eldredge's inventorship claim is insufficiently pleaded, (C) that Plaintiffs cannot bring a patent infringement claim, and to the extent they have done so their

pleading is insufficient, (D) that Plaintiffs' Lanham Act claim is insufficiently pleaded, (E) that the court should decline to exercise supplemental jurisdiction over the state law claims, and (F), that Plaintiffs' pleadings are insufficient as to Defendants Perry and FloPack. The court addresses these arguments in turn.

A. <u>Whether Eldredge's Derivative Claims are Proper (Counts II, III, IV, V, VI, VII, XI)</u>

Defendants argue that Eldredge's derivative claims on behalf of JT IP are improperly raised since Eldredge has not complied with requirements for bringing derivative actions under Fed. R. Civ. P. 23.1. Defendants raise three lines of argument: (i) Eldredge has not complied with Fed. R. Civ. P. 23.1(b)(3)'s requirement that plaintiffs filing derivative suits first make an effort to obtain the desired action from the directors or comparable authority (the "demand requirement"); (ii) that Eldredge is not properly positioned to bring this lawsuit under the JT IP <u>Operating Agreement</u> [#22-5] because the Operating Agreement requires a vote of 100% of the members before the company takes any action that may bind it; and (iii) that Eldredge cannot bring claims belonging to the JT IP in his own name. These three arguments are addressed in turn.

i. *Eldredge's Compliance with FRCP 23.1(b)(3)'s Demand Requirement*

Defendants argue that before bringing his derivative action, Eldredge failed to first exhaust his intracorporate remedies as required by Fed. R. Civ. P. 23.1(b)(3).[2] Mem. Supp. Mot. Dismiss 5 [#28]. Eldredge counters that these claims are properly pleaded since, under the circumstances present here, the demand requirement can and should be excused since a demand

---

[2] Fed. R. Civ. P. 23.1(b)(3) requires that the complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." This is often referred to as the "demand requirement."

would be futile. See Opp. Mot. Dismiss [#29]. The court agrees with Eldredge; here, the demand requirement should be excused.

Fed. R. Civ. P. 23.1 expressly contemplates that the demand requirement may be excused for reasons such as futility. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96–97 (1991). In evaluating whether excusal from this pleading requirement is appropriate, courts apply "state law to determine whether the facts alleged are sufficient to demonstrate that the demand . . . was adequate or would have been futile and thus should be excused." Bryceland v. Minogue, No. 13-cv-10212-FDS, 2013 WL 3208613, at *2 (D. Mass. June 21, 2013) (citing Kamen, 500 U.S. at 96–97). The Massachusetts Supreme Judicial Court has set forth that the demand requirement gives way where "a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested" since in such instances the demand would be "futile." Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000) (citing Bartlett v. New York, N.H. & H.R.R., 109 N.E. 452, 454 (Mass. 1915) (holding plaintiff not required to make demand on board of directors when demand would be "useless" or "an idle ceremony" because of board's interested status)).

Here, the allegations set forth in the complaint establish that the demand requirement would serve no purpose besides mere formality and thus the requirement is subject to being excused under the standards set forth by the Massachusetts Supreme Judicial Court in Harhen. 730 N.E.2d at 865. The complaint plausibly alleges that Florence engaged in the wrongdoing identified in the complaint and raises a significant prospect that Florence may be adjudged liable to the corporation or its shareholders. See id. at 865 & n.5 (adopting definition of "interested" found in 1 ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23 [1994]). Furthermore, where the demand requirement "protects the court from unnecessarily hearing a case that is not ripe for decision or that might be mooted by subsequent board action[,]

. . . provides an opportunity for the board to determine if it will pursue other remedies or take other appropriate corrective actions[,] . . . [and] permits the corporation to take over the suit and control the litigation," Plaintiff plausibly alleges the demand requirement would not effectuate its goals if applied here. Diamond v. Pappathanasi, 935 N.E.2d 340, 351 (Mass. App. Ct. 2010) (quoting 2 ALI Principles of Corporate Governance: Analysis and Recommendations § 7.03 comment c [1994]); see also Billings v. GTFM, LLC, 867 N.E.2d 714, 720 & n.19 (Mass. 2007) (finding demand requirement is excused where "complaint also noted the futility of making demand on the other members that they authorize the company to proceed against them directly."). Accordingly, based on the allegations set forth in the Amended Complaint, the court finds the demand requirement should be excused.

### ii.    Eldredge's Authority to Bring a Derivative Action on Behalf of JT IP

Defendants also challenge Eldredge's authority to bring a derivative action on behalf of JT IP. Defendants argue that the JT IP Operating Agreement [#22-5] provides that litigation may only be instituted by unanimous vote of the members and that in the case of a deadlock, the members must submit to mediation or arbitration to resolve the deadlock (the "ADR provision"). Mem. Supp. Mot. Dismiss 6 [#28] (citing §§ 5.1, 5.6 of Am. Compl., Ex. D, JT IP Operating Agreement [#22-5]). Thus, Defendants argue, the court should dismiss the action so that the parties may pursue ADR on the issue of whether JT IP should proceed with this derivative action against Florence, as required by the terms of the agreement.

Massachusetts law provides a default rule governing a member or manager's authority to bring a derivative action on behalf of an LLC. Mass. Gen. Laws ch. 156C, § 56, provides that "suit on behalf of the limited liability company may be brought in the name of the limited liability company" in one of two instances. First, by any member or members of the LLC that

have been authorized to sue by the vote of members who own more than fifty percent of the LLC. Id. at § 56(a). Second, by any manager or managers of an LLC authorized to sue by the vote of a majority of the managers. Id. at § 56(b). However, in both instances, the votes of any member or manager "who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded." Id. §§ 56(a) and (b). This provision parallels "[t]he common-law rule that LLC members are not required to ask other company managers or members to authorize a suit against themselves, because doing so would be futile." All Tech Networking, LLC v. Pryor, No. 1884CV01085BLS2, 2019 WL 2234614, at *3 (Mass. Super. Apr. 25, 2019) (citing Billings, 867 N.E.2d at 720 & n.19). Once Florence is excluded from the vote due to his alleged interest in the outcome of the suit, Eldredge represents a majority, indeed 100%, of the LLC membership and is thus authorized to bring the derivative suit pursuant to Massachusetts law. See Billings, 867 N.E.2d at 720 n.18 ("As the derivative claims were against all other members of GTFM, all of them had 'an interest in the outcome of the suit that is adverse to the interest of the limited liability company.' . . . Thus Billings would be the only member eligible under the statute to vote on authorizing a suit against all other members for breach of fiduciary duty. He impliedly did so by filing the complaint.").

Defendants argue that these default rules do not govern JT IP since JT IP's Operating Agreement has set forth its own rules concerning derivative suits brought by members. Defendants correctly point out that Massachusetts law allows LLCs broad authority to set forth their own internal procedures, including restrictions relating to derivative actions. See Mass. Gen. Laws ch. 156C, § 56 ("*Except as otherwise provided in a written operating agreement*, suit on behalf of the limited liability company may be brought in the name of the limited company . . .") (emphasis added); see also Billings, 867 N.E.2d at 720 n.18 (noting that the analysis was

based on there being "no provision in the operating agreement related to derivative suits."); Williams v. Charles, 996 N.E.2d 475, 478 (Mass. App. Ct. 2013) (holding that the strictures of Mass. Gen. Laws ch. 156C, § 56 applied where the operating agreement in the case did "not address authorization of members to bring suit on behalf of [the company].").

As an initial matter, Defendants' argument that the Operating Agreement addresses derivative suits is unconvincing. No portion of the Operating Agreement expressly or implicitly considers derivative suits. Instead, Defendants point to the general provision governing management of the LLC. This provision, contained in § 5.1 of the Operating Agreement, provides: "The Company shall be managed by the Members. No action may be taken by any Member to bind the Company without the affirmative vote of Members holding 100% of the Percentages then held by Members." Am. Compl., Ex. D, JT IP Operating Agreement 13 [#22-5]. While operating agreements may displace the default statutory rules for who may bring derivative actions, there is no indication that this general provision was an attempt to limit or curtail Members' ability to bring derivative actions. Cf. Williams, 996 N.E.2d at 478 ("The operating agreement in this case does not address authorization of members to bring suit on behalf of [the company]. We therefore look to G.L. c. 156C, § 29, to explain the calculation of the percentages of members with unreturned contributions.").

Even if the court assumed that the general management provision contained in § 5.1 of the Operating Agreement constrained the ability for members to bring derivative actions, Defendants' argument would still fail since there is no deadlock between the JT IP members that would trigger the ADR provision contained in § 5.6. The ADR provision provides that either member of JT IP may require a dispute be referred to arbitration in the case that "any vote is required on any matter under this Agreement." Am. Compl., Ex. D, JT IP Operating Agreement

14 [#22-5]. Defendants contend that since there is a dispute between the members as to whether the derivative action should be brought, Defendant may insist on having that dispute arbitrated. But, as discussed above, because Florence is an interested party in the outcome of the derivative action before the court, Florence's vote is excluded for the purpose of tallying the vote of the membership vis-a-vis whether Eldredge may initiate this derivative action on behalf of JT IP. Accordingly, there *are* "sufficient votes to approve . . . the matter" and § 5.6 of the Operating Agreement is therefore not implicated. See id.

      iii.     Whether Eldredge is Improperly Bringing Derivative Claims on his own Behalf

Defendants assert Eldredge cannot bring claims belonging to JT IP in his own name on behalf of JT IP. Mem. Supp. Mot. Dismiss 7 [#28]. But Defendants only lodge a wholesale objection without identifying any specific claim that Eldredge is improperly alleging on behalf of himself instead of derivatively on behalf of JT IP. Nor is it readily apparent that Eldredge has improperly brought a claim on his behalf that belongs to JT IP. Eldredge's inventorship claim (Count I) relates to harm he—rather than JT IP—suffered. See Am. Compl. ¶ 90 [#22]. Likewise, Counts V, VIII, IX, and X—the other claims brought on behalf of Eldredge individually—are supported with allegations of Eldredge's individualized injuries, not only harms to JT IP. See id. ¶¶ 129, 134, 138–39. While some of Plaintiffs' claims are supported with a bare recital of facts, see, e.g., id. ¶¶ 114–17 (stating "Florence owed Plaintiffs a fiduciary duty," and that his breach of these duties will and has caused "Plaintiff to suffer damages"), Defendants do not present any specific argument as to the sufficiency of these claims.

For these reasons, the court concludes that Eldredge's derivative actions on behalf of JT

IP are properly pleaded.[3]

B.  <u>Whether Eldredge's § 256 Correction of Inventorship Claim is Sufficiently Pleaded</u>

   <u>(Count I)</u>

Defendants allege Eldredge failed to sufficiently plead his 35 U.S.C. § 256 Correction of

Inventorship claim since named inventors are "presumed to be the true and only inventors" and

Plaintiff has failed to put forth allegations that carry his "heavy burden of proving [their

coinventorship] by clear and convincing evidence." Mem. Supp. Mot. Dismiss 7 [#28] (citing

<u>Rubin v. Gen. Hosp. Corp.</u>, No. 09-cv-10040-DJC, 2011 WL 1625024, at *4 (D. Mass. Apr. 28,

2011), <u>aff'd</u>, 523 F. App'x 719 (Fed. Cir. 2013); <u>Shum v. Intel Corp.</u>, 633 F.3d 1067, 1083 (Fed.

Cir. 2010)). But Defendants' recitation of these cases, which set forth plaintiffs' burden at trial,

is of no relevance to whether Plaintiff here has met the pleading requirements of Fed. R. Civ. P.

8(a)(2).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "set

forth factual allegations, either direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory." <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d

513, 515 (1st Cir. 1988). Here, to prevail on a § 256 Correction of Inventorship claim, a joint

inventor must establish that he or she:

> "(1) contribute[d] in some significant manner to the conception or reduction to practice of
> the invention, (2) ma[de] a contribution to the claimed invention that is not insignificant
> in quality, when that contribution is measured against the dimension of the full invention,

---

[3] In subsequent sections of their argument, Defendants re-raise this same issue with regard to
individual claims. For example, in Part C, <u>infra</u>, Defendants argue that Eldredge's derivative
patent infringement claim brought on behalf of JT IP is improperly pleaded for the reasons
discussed here. The court does not address these subsequent arguments since they are redundant
with the analysis in this section.

and (3) d[id] more than merely explain to the real inventors well-known concepts and/or the current state of the art.

Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998). Defendants argue that "[t]he Amended Complaint contains only the (false) allegation that Eldredge and Florence 'worked together.'" Mem. Supp. Mot. Dismiss 8 [#28]. That is not true. Eldredge alleges that while working together on the invention over a long period, he gave the credited inventor, Florence, specific information and conceptual insights that Florence did not have, which were then used as part of the conception of the '563 Patent—namely, "Eldredge [came] up with the idea to internalize the components of the diverter box to, in part, make it easier to manufacture, ship, and install." Am. Compl., ¶ 35 [#22]. Although these allegations do not establish that Plaintiff will prevail on his inventorship claim, they do set forth, directly or inferentially, plausible allegations as to each element of the claim and are therefore sufficient at this stage of the proceeding. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of a right to relief]").

C.  Whether JT IP's Patent Infringement Claim is Properly Pleaded (Count III)

Defendants assert JT IP's patent infringement claim must be dismissed (i) because "there is no basis for the allegation that the Patent itself was assigned to JT IP," and (ii) as JT IP failed to allege sufficient facts. Mem. Supp. Mot. Dismiss, 10–11 [#28]. The two arguments are addressed in turn.

i.  Whether JT IP Has Sufficiently Alleged Ownership Rights to the '563 Patent

Defendants' argument that there is "no basis" for Eldredge's contention that JT IP has ownership rights to the '563 Patent is contradicted by the factual allegations and documents attached to the Amended Complaint. Id. The gist of Defendants' argument appears to be that

"only the *application* to the Patent was assigned to JT IP, not the Patent itself." Mem. Supp. Mot. Dismiss 3 [#28] (emphasis in original). But, by its terms, Florence's 2018 assignment of the '563 Patent Application to JT IP, "assign[ed] and transfer[ed] unto said assignee [JT IP] the full and exclusive right to the said invention, and the entire rights, title and interest in and to any and all Patents which may be granted therefore, anywhere in the world." Am. Compl., Ex. G, Patent Assignment 2–3 [#22-8]. The USPTO's Manual of Patent Examining procedure also contradicts Defendants' position; it states that,

> [a]n assignment of a patent, or patent application, is the transfer to another of a party's **entire** ownership interest or a percentage of that party's ownership interest in the patent or application. In order for an assignment to take place, the transfer to another must include the entirety of the bundle of rights that is associated with the ownership interest, i.e., all of the bundle of rights that are inherent in the right, title and interest in the patent or patent application.

301 Ownership/Assignability of Patents and Applications (R-07.2015), MPEP § 301 (2018) (emphasis in original); see also Opp. Mot. Dismiss, 3 [#29]. Thus, Defendants' argument that JT IP has alleged no ownership rights of the '563 Patent is without merit.

  ii. *Whether JT IP Has Sufficiently Pleaded Infringement Against Defendants FloPack and Perry*

  Defendants contend that Plaintiffs' patent infringement claim fails to allege sufficient facts as to Defendants FloPack and Perry. Mem. Supp. Mot. Dismiss 11 [#28]. Specifically, Defendants contend that besides noting that Perry "attended certain meetings, without detail[,]" and that "FloPack was the assignee of the Patent," the "Amended Complaint contains only speculative and conclusory statements about Perry's knowledge." Id. Thus, Defendants argue, the complaint fails to comply with Plaintiffs' pleading standards under Fed. R. Civ. P. 8(a)(2).

  Defendants do not accurately portray the substance of the factual allegations contained in the complaint. First, Plaintiffs allege Perry knew about the Patent. See Am. Compl. ¶ 68 [#22]

("On November 5, 2019, Eldredge and Florence met, along with counsel and . . . Kimberly Perry to discuss the business of JTIP, the ownership of the patent by JTIP as per their agreement, the question of inventorship, and the disputes outlined herein"). Since Perry is the sole manager of FloPack, id. ¶¶ 5, 77, her knowledge plausibly indicates defendant FloPack knew of the '563 Patent as well.[4] Second, Plaintiffs allege that Defendants wrongly assigned the '563 Patent to FloPack and that Perry (and thus FloPack) was aware that the purported assignment was wrongful. Id. ¶¶ 71–74, 82. Third, Plaintiffs allege that FloPack and Perry are now infringing on JT IP's rights to the '563 Patent by "making, using, offering for sale, selling, distributing" what is claimed in the '563 Patent. Id. ¶ 104.

Plaintiffs' pleading requirement is to "state a claim to relief that is plausible on its face" and to do so in a manner that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (alteration in original) (quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Plaintiffs' pleading requirements are no different in cases where Plaintiffs allege patent infringement. See Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing a district court's grant of a motion to dismiss where the Circuit found that the complaint and attachments were "enough to provide [defendant] fair notice of infringement of the asserted patents.").

Here, the allegations contained in the complaint are plausible on their face. Furthermore, they plainly convey to Defendants that the Plaintiffs are alleging that Defendants knowingly misappropriated the '563 Patent and are now willfully infringing on that patent, directly and/or indirectly, by making, distributing, and/or selling the patented technology. Defendants are now

---

[4] Plaintiffs' allegation that Florence assigned the '563 Patent to FloPack also plausibly indicates FloPack's awareness; FloPack's attorney's email and FloPack's physical address were on the assignment, and FloPack was likely notified of the assignment. Am. Compl., Ex. H, 2–3 [#22-9].

on notice of the plausible allegations and can defend them on the merits. Accordingly, the allegations satisfy Plaintiffs' obligations under Fed. R. Civ. P. 8(a)(2) and thus are not subject to dismissal.

D. Whether Plaintiffs have Sufficiently Alleged the Lanham Act Claim (Count II)

The Amended Complaint alleges that by "misrepresenting the ownership of the '563 Patent to customers, potential customers, and potential investors" the '563 Patent is being represented to the marketplace in a false and misleading manner that tends to deceive and create confusion in violation of § 43(a) of the Lanham Act. Am. Compl. ¶¶ 95–97 [#22].

Defendants argue Plaintiffs' Lanham Act claim should be dismissed because the Act prohibits only misrepresentations in commercial advertising or promotions and Plaintiffs have supported their allegation of such misrepresentations with facts only pleaded "upon information and belief." Mem. Supp. Mot. Dismiss at 9–10 [#28]; see also Am. Compl., ¶ 95 [#22].

"Pleading 'upon information and belief' is not fatal under Twombly." Aspen Tech., Inc. v. Walter, No. 19-cv-11292-GAO, 2019 WL 4795551, at *4 (D. Mass. Sept. 12, 2019). Instead, allegations rooted in "information and belief" can helpfully fill the interstitial voids in a complaint that exist between those allegations that are rooted in precise knowledge or recollection. In this way, references to "information and belief" assist both the parties and the court by allowing the complaint to clearly differentiate those things known to be true and those things for which there is reason to believe the assertion's accuracy. Courts have found that allegations based upon "information and belief" survive an analysis under Twombly where (1) the facts are peculiarly within the possession and control of the defendant, or (2) the belief is based on factual information that makes the inference of culpability plausible. See Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018)

(citing <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010) and <u>Menard v. CSX Transp., Inc.</u>, 698 F.3d 40, 44–45 (1st Cir. 2012)).

Plaintiffs' Amended Complaint, as pleaded, satisfies neither consideration. The facts pleaded upon information and belief are that "Defendants are misrepresenting the ownership of the '563 Patent to customers, potential customers, and potential investors." Am. Compl. ¶ 95 [#22]. While Defendants may be better positioned to have this information, the court does not find the alleged misrepresentations here to constitute facts that are "peculiarly within the possession and control of the defendant" given the allegations concern representations made in advertising and promotion as opposed to insular activities where the facts may be "peculiarly" hard to come by. Furthermore, the facts that are alleged in the Amended Complaint do not make the inference of culpability plausible. Plaintiffs' allegation rests on the "[t]he Certificates of Organization of Perry's companies . . . coupled with the IP claimed by FloPack." <u>Id.</u> at ¶ 101. While these allegations, by themselves, may be consistent with culpable conduct, they are not enough to make an inference of culpability a plausible one. For these reasons, Plaintiffs' Lanham Act claim fails to state a claim and is subject to dismissal without prejudice.

E. <u>Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Law Claims</u>

Defendants' argument that the court should decline to exercise its supplemental jurisdiction is premised on this court first "dismiss[ing] all claims over which it has original jurisdiction." Mem. Supp. Mot. Dismiss 11–12 [#28]. Because, for the reasons set forth above, Plaintiffs will proceed with at least some of their federal claims, Defendants' argument concerning the appropriateness of the court continuing to exercise supplemental jurisdiction over the ancillary claims is no longer applicable.

F.  Whether Plaintiffs have Alleged Sufficient Facts with Respect to Claims Against FloPack and Perry[5]

Defendants claim Plaintiffs have failed to allege sufficient facts with respect to their claims against FloPack and Perry. Mem. Supp. Mot. Dismiss 12 [#28]. But Defendants provide little more than the conclusory statement that the claims are deficient. See id. Further, Defendants understate the relevant facts pleaded as they relate to FloPack and Perry. Defendants state in the pleading that "Plaintiffs allege that Perry attended certain meetings to discuss the business of JT IP," id., but fail to note the allegations relevant to Plaintiffs' claims against these two defendants; inter alia, Perry is Florence's daughter, Am. Compl., ¶ 5 [#22], Perry is FloPack's only member, see id., and that the meetings she attended included discussion of the contested patent, id. ¶¶ 64, 68. These allegations provide a plausible basis for the alleged claims and therefore Defendants' motion to dismiss Plaintiffs' claims against these two defendants is denied.

IV.  **Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss [#27] is GRANTED as to Count II, but otherwise DENIED.

IT IS SO ORDERED.

Date:   September 1, 2020                        /s/ Indira Talwani
                                                United States District Judge

---

[5] Defendants also argue in this section that the claims against FloPack and Perry should—with the exception of the Lanham Act and patent infringement claims—be dismissed under their supplemental jurisdiction analysis. This argument appears redundant with their Part E claim; here, as there, Defendants' motion to dismiss on these grounds is denied. See supra Part E.