UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JT IP HOLDING, LLC, and<br>JEFFREY S. ELDREDGE,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS FLORENCE, FLOPACK, LLC,<br>and KIMBERLY PERRY,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*     Civil Action No. 1:20-cv-10433-IT |

MEMORANDUM & ORDER

October 25, 2022

TALWANI, D.J.

This action arises out of a business dispute between Plaintiff Jeffrey Eldredge and Defendant Thomas Florence. Eldredge and JT IP Holdings—a company owned equally by Eldredge and Florence—bring various tort and contract-based claims against Florence, his daughter Kimberly Perry, and Perry's company FloPak, LLC. Am. Compl. [Doc. No. 22]. Eldredge also brings a correction of inventorship claim against Florence pursuant to 35 U.S.C. § 256 (Count I) which is the basis for the court's jurisdiction over this action. Pending before the court is Florence's Motion for Partial Summary Judgment [Doc. No. 76] seeking summary judgment on Count I of the Amended Complaint [Doc. No. 22] and a remand of the state law claims. For the reasons set forth below, Defendant's motion for partial summary judgment on Count I is GRANTED. The request for remand is DENIED where this action did not originate in state court.

I.       Factual Background

In 1989, Florence patented a dry well product known as the FloWell. Florence Aff. ¶ 3 [Doc. No. 78-1]. In 2016, he decided to improve and remarket the FloWell as a new device he would patent and call the "ProWell." Id. at ¶¶ 3-4. In late 2016, while still perfecting the initial ProWell design, Florence approached Eldredge about partnering to bring the dry well devices to market. Jeffrey Eldridge Dep., 58:1-18 ("Eldredge Dep.") [Doc. No. 78-3] (Florence asked Eldredge "to come work . . . and to help to push this product along"). Florence brought decades of experience developing and licensing water management patents and relationships in the industry. Florence Dep., 35:22-38:24 [Doc. No. 81-8]. Eldredge brought experience with the physical dry well systems themselves. In his business as a landscaper, Eldredge often worked on drainage issues and "installed [dry well systems] constantly." Laura Eldredge Dep., 11:3-19 [Doc. No. 78-10]; see Eldredge Dep., 15:06 [Doc. No. 78-3]. Because he regularly worked with the physical product, Eldredge "kn[e]w[] a lot about. . . the original [dry well] products that were out there" and could identify areas for innovation. Laura Eldredge Dep., 15:1-14 [Doc. No. 78-10].

Eldredge and Florence formed JT IP Holding, LLC ("JT IP") in or about December 2016[1] for the purpose of developing and marketing water management devices. JT IP Operating Agreement 5, 24 [Doc. No. 81-2]. As sole members of the new company, Florence and Eldredge each held a 50% voting interest in all matters relating to JT IP. Id. at 6. Florence agreed to contribute "design, engineering, patent and legal expenses to the Company valued in the amount

---

[1] Florence and Eldredge signed the formation documents for JT IP on December 2, 2016, but "didn't want to pay . . . the 500 bucks so . . . actually formed it in 2017." Eldredge Dep. 54:18-24 [Doc. No. 78-3].

2

of $100,000" while Eldredge agreed to provide "expense reimbursement to the Company valued in the amount of $50,000." Id. When they formed JT IP, Eldredge believed that Florence "already had the [ProWell] patent done." Eldredge Dep., 58:15-18, 115:3-21 [Doc. No. 78-3].

On January 6, 2017, Florence filed an application with the United States Patent and Trademark Office ("USPTO") for a provisional patent on the ProWell device. Provisional Patent Filing [Doc. No. 78-1].

Throughout 2017, Eldredge and Florence discussed various aspects of the ProWell design including the locations of the drain and the diverters. Laura Eldredge Dep., 29:4-5 [Doc. No. 78-10]. By summer, Eldredge brought Elliot Neiwirth, a friend living on his farm, on board to produce renderings of the technical aspects of the ProWell invention. Neiwirth Dep., 13:12-23 [Doc. No. 78-6]. Neiwirth had undergraduate training in mechanical engineering but was not a licensed engineer. Id. at 12:15-20. Neiwirth stepped in to do renderings after JT IP could no longer afford to pay the engineer they had been previously using. Neiwirth created drawings of the ProWell as they were perfecting the product's "design for manufacturing." Florence Dep. 50:1-10 [Doc. No. 81-8] ("first you file a provisional patent, and then you have 12 months to talk to engineers, finance people and so on to determine the best outcome so that you have a good looking, safe, easy to transport[,] manufactured and installed product"); Neiwirth Dep. 27:17-21 [Doc. No. 78-6] ("I went back and made them into a digital reality, so to speak, made them work in the real aspect. It wasn't just some dream that Tom had that had to work. I actually made it into something that can work."). Neiwirth and Florence "did a lot of different iterations . . . [on the] design for manufacturing." Florence Dep. 51:19-52:6 [Doc. No. 81-8]. The process required "try[ing] a lot of different things" aimed at "solving a number of different problems that are related to the design." Id.

On January 6, 2018, Florence filed the formal patent application for the ProWell with the USPTO. Patent Application [Doc. No. 78-1]. The application listed Florence as the sole inventor. Id. On July 30, 2019, the USPTO granted the ProWell application and issued U.S. Patent No. 10,364,563 to Florence for the invention. Id. Eldredge first alleged co-inventorship of the ProWell patent in 2019, shortly before this lawsuit was filed. Def. Statement of Facts ¶ 32 [Doc. No. 78]; Eldredge Dep., 52:8-12 [Doc. No. 78-3].

## II.  Procedural Background

Plaintiffs filed their Complaint [Doc. No. 1] on March 3, 2020, and an Amended Complaint [Doc. No. 22] on May 26, 2020, which Defendants moved to dismiss, see [Doc. No. 27]. The court granted Defendants' motion in part, dismissing all federal claims except Count I. Mem. & Order [Doc. No. 36]. After Defendants answered, see [Doc. No. 39], and following discovery, Florence filed the pending Motion for Partial Summary Judgment [Doc. No. 76] as to the remaining federal claim, which Eldredge has opposed, see [Doc. No. 80].[2]

## III.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119,

---

[2] Plaintiffs included with their opposition a cross-motion for summary judgment on the other claims. Id. The court stayed Defendants' time to file an opposition pending resolution of Florence's motion. See Elec. Order [Doc. No. 84].

125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### IV. Discussion

#### A. Count I

Florence argues Eldredge's inventorship claim fails as a matter of law because the record lacks evidence sufficient for a reasonable jury to find Eldredge met his burden of proof. To prevail on a § 256 Correction of Inventorship claim, the purported inventor must overcome the presumption that "named inventors on a patent are the true and only inventors" by a showing of "clear and convincing evidence" that he "contribute[d] in some significant manner to the conception" of a patented and significant element of the invention. Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1381 (Fed. Cir. 2004) (quoting Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997)); see Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998). When the evidence, viewed in a light most favorable to the non-moving party, fails to establish the requirements for correcting inventorship by clear and convincing evidence, summary judgment is appropriate. Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1327 (Fed. Cir. 2004).

While Eldredge "need not demonstrate that he made a contribution equal in importance" to Florence, "to claim his right to joint inventor status," Eldredge must show he significantly contributed to the actual conception of a patented element and not merely to the design process or realization of the idea. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention" or by aiding in the process of perfecting or actualizing the invention). "One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed combination as a whole does not qualify as a

joint inventor." Ethicon, 135 F.3d at 1460. Moreover, inventorship does not run from contributions made after conception. Eli Lilly, 376 F.3d at 1359. Conception is complete when "a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice" has been "form[ed] in the mind of the inventor." Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed.Cir.1986) (internal quotation marks omitted).

The patent claims a "drywell apparatus for collecting and diverting runoff surface water or waste water, and controlling the flow and direction of subsurface water." Patent Claim 1 [Doc. No. 81-5]. The claimed apparatus contains "a plurality of interior diverters attached to the sidewall interior, within the drywell interior, each interior diverter positioned about one of the plurality of drain-type ports" and positioned so that "water from the drywell apparatus interior enters the interior diverter top . . . [and gets sent] out through one of the plurality of drain-type ports, laterally dispersing into the surrounding soil" and simultaneously stopping "backfill soil from intruding into the drywell interior." Id.[3] The design in the original FloWell patent had no diverters, and Florence considered their incorporation into the ProWell design a patentable innovation differentiating this next generation drywell device. Florence Dep., 49:3-24 [Doc. No. 81-8]. Florence projected that by adding diverters—whether interior or exterior—to block soil

---

[3] Typically, the first step of an inventorship analysis is claim construction. See Eli Lilly, 376 F.3d at 1360. Here, however, where Defendants did not request construction of any claims and have conceded that terms of the ProWell patent are clear, the court finds no need for claim construction. See United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding that claim construction is required only "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution in order to determine" the issue before the court).

from entering the reservoir where a drywell device sits, the ProWell would reduce installation labor by about seventy percent. Id.

Eldredge asserts that his unique contribution warranting correction of inventorship was the location of the diverters, and that it was his idea to place the ProWell's diverters on its interior walls.[4] Eldredge explained that he "came up with the idea to put the diverter on the inside when [he] saw" the patent for another drywell device that claimed external diverters and believed they would have "to do something different." Eldredge Dep., 45:10-23 [Doc. No. 78-3]. Eldredge testified that "the idea to put the diverter on the inside" was also born out of solving practical challenges of shipping and manufacturing a drywell product with external diverters. Id. at 45:24-46:21.[5] Eldredge could not offer "an exact date" or "location" of his "Eureka moment" because he and Florence "had all different discussions . . . battering it back and forth." Id. at 46:22-47:8. But Eldredge's own assertion that he came up with the idea to internalize the diverters is not enough. Because there exists a "strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention," to prevail on a correction of inventorship claim, the claimed inventor must produce evidentiary support of their

---

[4] Eldredge also asserts that he collaborated on the creation of the stackable design and drain connector element of the ProWell device. But co-inventorship requires contribution to the subject of a patent claim and the parties agreed at argument that of Eldredge's asserted design contributions, only the internal diverters appear in the patent itself.

[5] Eldredge testified: "So I came up with the idea to put the diverter on the inside because we couldn't make it work with the tolerances on the angle putting the diverter on the outside, trying to stack it and all that stuff. How do you ship it? How many units can you fit on it before a 5-foot person can't lift it up and off the top? All these things came into play. You had – there's just so many things that went on and on. So I came up with the idea. . ." Eldredge Dep., 45:15-46:9 [Doc. No. 78-3].

alleged contribution. Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997); see Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350–51 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated."). Eldredge's testimony, "standing alone, is insufficient to prove conception," Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir. 1993), and thus, to avoid summary judgment, the record must contain "evidence to corroborate the alleged . . . conception." Eli Lilly, 376 F.3d at 1358.

Eldredge concedes that the record contains no contemporaneous documentation corroborating any of his testimony. Instead, Eldredge seeks to corroborate his narrative that he conceived of the design of the internal diverter with the testimony of two witnesses: his wife Laura Eldredge and his friend Elliot Neiwirth. While the oral testimony of someone other than the alleged inventor may conceivably provide the corroboration necessary, to meet the clear and convincing standard, this requires finding that "the picture painted by all of the [testimony] taken collectively gives . . . an abiding conviction that [the putative inventor's] assertion of prior conception is highly probable." Price, 988 F.2d at 1196 (internal quotation marks omitted). Known as the "rule of reason," this analysis requires the "trial court [to] consider corroborating evidence in context, make necessary credibility determinations, and assign appropriate probative weight to the evidence to determine whether clear and convincing evidence supports a claim of co-inventorship." Ethicon, 135 F.3d at 1464.

Here, the witnesses' testimony did little more than recite Eldredge's own conclusory statements that the internal diverters were his idea, offering almost no additional explanation or factual support to corroborate Eldredge's inventorship claim. At most, when viewed in the light most favorable to Eldredge, Elliot Neiwirth's testimony corroborates Eldredge's assertions that

9

(1) he was involved in the overall design and construction of the ProWell device and (2) he discussed internalizing the diverters with Florence. See Eldredge Dep. 39:1-22, 46:22-47:8 [Doc. No. 78-3].[6] And Laura Eldredge's testimony reflects that she only observed Eldredge's side of conversations.[7] And while confirming Eldredge's frequent collaboration with Florence on the ProWell generally and the diverter location specifically may be enough to show Eldredge was engaged in the design process for the physical device, Eldredge's inventorship claim does not turn on his involvement in designing the diverters, but rather on whether he conceived of internalizing them. See Trovan, Ltd. v. Sokymat SA, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("An inventor may solicit the assistance of others when perfecting the invention without 'losing' any patent rights."). And where Eldredge has produced no such evidence corroborating his assertion that he conceived of the internal diverters, Eldredge's inventorship claim fails as a matter of law.

---

[6] Elliot Neiwirth testified to frequent brainstorming sessions with Florence and Eldredge, design meetings and deliberations about the viability of internal diverters, and collaborating with Eldredge and Florence on the diverter design, but could not recall whether Eldredge was the first to suggest putting the diverters inside the device. Neiwirth Dep., 56:11-16 [Doc. No. 78-6].

[7] Laura Eldredge testified that in early 2017, while she and Eldredge were at their home, Eldredge told her "I think we could put [the diverters] on the inside of the dry well and it could be successful, we could get the water to flow out." Laura Eldredge Dep., 15:15-18 [Doc. No. 78-10]. She explained that Eldredge was independently researching existing drywell patents online when he announced this idea to Laura, and that soon after, she heard him suggesting internalizing the diverters to Florence. Id. at 14:8-15:18, 42:7-13; Pl. Counterstatement of Facts ¶ 82 [Doc. No. 81]. But Laura could offer no detail into the conversation as a whole: what Florence had said that prompted Eldredge's statement, or how Florence received the information. All Laura Eldredge knew "regarding the diverters [was] that [Eldredge] thought that this should go on the inside of the dry well" because Eldredge was "the one that really . . . talked to [her] about . . . the interior diverters . . . saying that he really thinks this could work and be a really good idea." Laura Eldredge Dep., 42:8-9, 95:9-16 [Doc. No. 78-10]. Laura's repetition of Eldredge's claims that he thought of incorporating interior diverters into the ProWell design is not sufficient to corroborate Eldredge's allegations where it offers no independent support for Eldredge's claim that he introduced Florence to the concept or that Eldredge is responsible for the interior diverters being incorporated into the patented design.

### B. Remaining Claims

Still pending in this action are eight state law claims arising out of the business relationship between Eldredge and Florence.[8] Defendant seeks remand to state court of these remaining claim. Remand, however, requires that a case have been removed from a state court in the first instance. See 28 U.S.C. §§ 1447, 1454. Here, the case was filed in federal court in the first instance and accordingly, remand is not possible.[9]

### V. Conclusion

For the foregoing reasons, Florence's Motion for Partial Summary Judgment [Doc. No. 76] is granted as to Count I of the Amended Complaint [Doc. No. 22]. The request to remand the remaining claims to state court is denied.

IT IS SO ORDERED.

October 25, 2022                                    /s/ Indira Talwani
                                                    United States District Judge

---

[8] The amended complaint alleges state law causes of action for assignment (Count IV), breach of fiduciary duty (Count V), conversion (Count VI), unjust enrichment (Count VII), fraud and misrepresentation (Count VIII), intentional tortious interference with contract (Count IX), intentional interference with prospective economic advantage (Count X), and unfair business practices / deceptive acts and practices (Count XI).

[9] Whether the court should decline to exercise supplemental jurisdiction pursuant to 13 U.S.C. § 1367(c)(3) and dismiss the action was not directly addressed in the parties' papers but may still be raised by the parties.