UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JT IP HOLDING, LLC, and<br>JEFFREY ELDREDGE, | * <br> * <br> * |
| Plaintiffs, | * <br> * |
| v. | *   Civil Action No. 1:20-cv-10433-IT <br> * |
| THOMAS FLORENCE,<br>FLOPACK, LLC, and<br>KIMBERLY PERRY | * <br> * <br> * <br> * |
| Defendants. | * |

MEMORANDUM & ORDER
September 12, 2024

TALWANI, D.J.

        This action arises out of a business dispute between Plaintiff Jeffrey Eldredge and

Defendant Thomas Florence. Eldredge and Plaintiff JT IP Holding, LLC ("JT IP")—a company

Eldredge and Florence formed—bring claims against Florence, his daughter Kimberly Perry, and

Perry's company FloPack, LLC (collectively "Defendants"). Am. Compl. [Doc. No. 22].

Plaintiffs asserted three federal claims, which were disposed of at various stages of litigation, and

various state law claims. Pending before the court are the Plaintiffs' Motion for [Partial]

Summary Judgment [Doc. No. 79] as to Count IV—where JT IP seeks a declaratory judgment

regarding the assignment of U.S. Patent No. 10,364,563 (the "'563 Patent")—and Defendants'

Motion to Dismiss and, in the Alternative, for Summary Judgment [Doc. No. 92] on all counts.

For the reasons set forth below, Defendants' Motion to Dismiss is DENIED because the court is

exercising supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.

§ 1367, Plaintiffs' Motion for [Partial] Summary Judgment is DENIED, and Defendants' Motion

for Summary Judgment is DENIED in part and GRANTED in part.

I.      **Procedural Background**

Plaintiffs commenced this action in March 2020 asserting federal question jurisdiction. Compl. ¶ 6 [Doc. No. 1]. Plaintiffs' Amended Complaint [Doc. No. 22] alleged three federal claims and eight state law claims. Eldredge brought a federal claim for correction of inventorship of the '563 Patent (Count I) and a state law claim for fraudulent misrepresentation (Count VIII) against Florence, and state law claims for intentional tortious interference with a contract (Count IX) and intentional interference with prospective economic advantage (Count X) against FloPack and Perry. JT IP brought federal claims for violation of the Lanham Act (Count II) and patent infringement (Count III) against FloPack and Perry and state law claims seeking a declaratory judgment regarding the assignment of the '563 Patent (Count IV), conversion (Count VI), unjust enrichment (Count VII), and violations of M.G.L. ch. 93A (Count XI) against all Defendants. Both Plaintiffs also brought a claim for breach of fiduciary duty (Count V) against Florence.

Defendants moved to dismiss for failure to state a claim, Mot. to Dismiss [Doc. No. 27], and this court granted the motion as to Count II only, Mem. & Order [Doc. No. 36]. In December 2020, this court dismissed Count III without prejudice at the joint request of all parties. Elec. Order [Doc. No. 43].

After the close of fact discovery, Defendant Florence moved for partial summary judgment as to Count I (the only remaining federal claim) and requested that should the motion be granted, this court also remand the remaining eight state law claims to state court. Defs.' Mem. ISO Mot. Partial SJ 1 [Doc. No. 77]. This court granted summary judgment as to Count I but denied the request to remand the remaining state law claims as this action did not originate in state court. Mem. & Order [Doc. No. 88].

2

In their pending motions, Plaintiff JT IP seeks partial summary judgment as to Count IV, Pls.' Mot. [Doc. No. 79], and Defendants request that this court decline to exercise supplemental jurisdiction and dismiss the remaining state law claims without prejudice. Defs.' Mot. [Doc. No. 92]. In the alternative, should this court retain jurisdiction, Defendants request summary judgment as to all counts. Id. at 1, 8.

## II.    Defendants' Motion to Dismiss

"A court's subject-matter jurisdiction defines its power to hear cases." Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 560 (2017). Thus, "[f]ederal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

Defendants argue that the court should decline to exercise jurisdiction over the state law claims because all federal claims have been dismissed, the claims should never have been brought in federal court where the Plaintiffs did not have evidence to support them, and no trial date has been set. Defs.' Mem. ISO Mot. 13 [Doc. No. 93].

"[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). In exercising this discretion, "the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996). "When the balance of these factors indicates that a case properly belongs in state court, as when federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted).

"There may, on the other hand, be situations in which . . . the argument for exercise of pendent jurisdiction is particularly strong," Gibbs, 383 U.S. at 726–27, and the court does not automatically lose jurisdiction over pendent state-law claims where they arise from the same nucleus of operative facts, Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 19–20 (1st Cir. 2018). Instead, pendent jurisdiction doctrine indicates a presumption in favor of dismissal that can be overridden when the aforementioned factors weigh strongly enough in favor of jurisdictional retention. See Roche, 81 F.3d at 257. "The preferred approach is pragmatic and case specific. Thus, in 'an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims.'" Id. (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)). "[A]s long as the plaintiff's federal claim is substantial, the mere fact that it ultimately fails on the merits does not, by itself, require that all pendent state-law claims be jettisoned." Rodriguez, 57 F.3d at 1177.

In this case, while Plaintiffs' federal claims ultimately failed, they were not insubstantial where two of the three federal claims survived Defendants' motion to dismiss. See Mem. & Order [Doc. No. 36].

Litigation in this court has been ongoing for over four years, discovery is complete, and this court is well familiar with the case. Dismissal and state re-filing would undoubtedly cause significant delays, burden another court with a complex fact pattern, and impose a significant financial burden on all parties. Therefore, factors of convenience and judicial economy weigh strongly in favor of this court retaining jurisdiction.

In terms of relatedness of the state and federal claims, the majority of the state claims surround the '563 Patent, its development, and the rights to it—just as those of the federal claims did. As such, the nucleus of operative facts of the state and federal claims is virtually the same.

4

Finally, regarding comity, none of the merits of this case present any complex or novel questions of state law best preserved for the state courts to decide. On the contrary, the issues presented in this case, as discussed below, are clearly articulated by Massachusetts statute and precedent, and it is not an insurmountable task for this court to apply those laws accordingly.

First Circuit precedent bolsters this court's decision to retain jurisdiction over the state law claims in this case. See e.g., Roche, 81 F.3d at 257 (finding the district court had not exceeded its discretion in retaining supplemental jurisdiction as the "litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction"); Santana-Vargas v. Banco Santander Puerto Rico, 948 F.3d 57, 62 (1st Cir. 2020) (affirming the district court's declination of supplemental jurisdiction but noting that "retention [of jurisdiction] was clearly an option" because "[a]lthough a final trial date was not yet set, discovery was complete" and "there [was] clearly some substantive overlap" between the federal and state claims").

Defendant's Motion to Dismiss is DENIED and this court will retain supplemental jurisdiction over the state law claims.

### III.    Motions for Summary Judgment

#### A.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers Ins., 670 F.3d 119, 125 (1st

Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing on] mere allegation[s] or denials of [the] pleading[s]." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255. However, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if

6

the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

The filing of cross motions does not alter these general standards; rather the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each party, the appropriate ruling. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (noting that cross-motions for summary judgment do not "alter the basic Rule 56 standard" but rather require the court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed").

B.    Defendants' Motion for Summary Judgment

Defendants seek summary judgment as to all counts.

1.    Factual Background

Viewing the record in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, a reasonable jury could find as follows.

In 2016, Florence approached Eldredge about partnering to bring to market a dry-well device he would patent called the "ProWell." Eldredge Dep., 58:1–18 [Doc. No. 78-3]. As part of this endeavor, Eldredge paid Florence $15,000 of an initially agreed upon $50,000 in September of 2016. Florence Dep. 16:1–2 [Doc. No. 81-8]; Eldredge Dep. 59:5–9 [Doc. No. 78-3]; New Brand/JT IP Financial Worksheet ("Financial Worksheet") Line 3 [Doc. No. 94-5].

Eldredge made additional "equity payments" to Florence by check totaling $4,963.49[1] in October and November of 2016. Financial Worksheet Lines 4–7 [Doc. No. 94-5]; Eldredge Dep. 93–94 [Doc. No. 78-3]. At Florence's request, Eldredge placed Florence on the payroll of a separate company Eldredge owned, Starboard Side Landscaping, LLC ("Starboard Side Landscaping"), in late 2016. Florence Dep. 34: 1–5 [Doc. No. 81-8]; Eldredge Dep. 59:10–15 [Doc. No. 78-3]. Eldredge understood that Florence sought to be employed on paper in the event he wanted to establish a line of credit, and Florence never actually performed work for Starboard Side Landscaping as an employee. Eldredge Dep. 59:16–23 [Doc. No. 78-3].[2]

Also in pursuit of their endeavor, Eldredge and Florence formed New Brand Marketing, LLC ("New Brand") and JT IP Holding, LLC ("JT IP"). New Brand was formed in December 2016. Am. Compl. ¶ 12 [Doc. No. 22][3]; Florence Dep. 17:15–24, 18:1–18 [Doc. No. 81-8]; Secretary of the Commonwealth of Massachusetts Corporations Division, corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (last visited Sept. 8, 2024). When it

---

[1] This financial accounting, provided by Plaintiffs, consists of four payments made by check. Financial Worksheet Lines 4–7 [Doc. No. 94-5]. Plaintiffs have provided copies of only two of these checks totaling $3,000. Carlson Expert Test. 19–20 [Doc. No. 94-9]. Of the other two checks, Plaintiffs have provided a date and check number for only one totaling $1,000. Financial Worksheet Line 6 [Doc. No. 94-5].

[2] Florence refutes this, stating that Eldredge placed him on payroll exclusively to work for Starboard Side Landscaping as an employee. See Florence Dep. 64–76 [Doc. No. 81-8].

[3] The Amended Complaint is verified under oath by Eldredge. Am. Compl. 25 [Doc. No. 22]. In the First Circuit, a verified complaint is "treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) (in summary judgment milieu, affidavits 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein')." Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991). Therefore, the factual averments in the Amended Complaint, "to the extent demonstrated to come within [Eldredge's] personal knowledge, [are] fully tantamount to a counter-affidavit." Id. at 1262–63.

was formed, Florence and Eldredge held 2/3rd and 1/3rd ownership of New Brand respectively, and each held 50% voting rights. Am. Compl. ¶ 51 [Doc. No. 22]; Answer ¶ 51 [Doc. No. 39].

Eldredge and Florence entered in the JT IP Operating Agreement dated December 2, 2016. Am. Compl. ¶ 13 [Doc. No. 22]; JT Operating Agreement [Doc. No. 81-2].[4] Under that agreement, Florence agreed to contribute "design, engineering, and legal expenses to [JT IP] valued in the amount of $100,000" while Eldredge agreed to provide "expense reimbursement to [JT IP] valued in the amount of $50,000." Id. Accordingly, Florence would own a 66.667% equity share of JT IP while Eldredge would own a 33.333% equity share. Id. at 25. The JT IP Operating Agreement also provides that "[n]o action may be taken by any Member to bind the Company without the affirmative vote of Members holding 100% of the Percentages then held by Members." Id. at 13. Florence does not dispute that he has seen versions of this agreement. Florence Dep. 30:3–9 [Doc. No. 81-8].

On January 6, 2017, Florence filed an application with the United States Patent and Trademark Office for a provisional patent on the ProWell device on which Florence was listed as the only inventor. Provisional Patent Filing [Doc. No. 78-1].

In April 2017, Eldredge and Florence agreed in a meeting that Eldredge would contribute another $100,000 capital investment to the endeavor. See Am. Compl. ¶ 29 [Doc. No. 22];

---

[4] As discussed in connection with Plaintiffs' cross-motion for summary judgment, Defendants contest the validity of this document, arguing that Florence's purported signature is a forgery. See Mem. ISO Defs.' Mot. 11 [Doc. No. 93].

Florence Dep. 25:4–8 [Doc. No. 81-8]. In return, Eldredge was to receive "a 50% ownership interest in JT IP." Am. Compl. ¶ 29 [Doc. No. 22].[5]

A certificate of Organization for JT IP was approved on May 16, 2017. Secretary of the Commonwealth of Massachusetts Corporations Division, corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (last visited Aug. 8, 2024).

Eldredge paid Florence an additional $110,400 through Starboard Side Landscaping payroll checks in 2016, 2017, and 2018. Financial Worksheet Lines 9–10 [Doc. No. 94-5]. These amounts were for Eldredge's capital investments in JT IP and Florence never performed any work for Starboard Side Landscaping. Eldredge Dep. 60:21–23, 95–96 [Doc. No. 78-3]. In addition to the payments directly to Florence, Eldredge also paid $41,278 to various venders between 2016 and 2018. Financial Worksheet Line 39 [Doc. No. 94-5]. Eldredge contends that Florence is responsible for half of these expenses, and therefore considers $20,639 his own contribution to the companies. Id.; Eldredge Dep. 99:7–21 [Doc. No. 78-3]. In all, Eldredge claims that his capital contribution to JT IP and New Brand totaled $151,002, meeting the $150,000 he agreed to pay. Financial Worksheet Line 41 [Doc. No. 94-5]; Eldredge Dep. 98:21–24, 99:1 [Doc. No. 78-3].[6]

---

[5] Florence disputes Eldredge's claim and asserts that he was to "assign 50 percent of New Brand Marketing to [Eldredge]." Florence Dep. 25:8–18 [Doc. No. 81-8].

[6] Florence contends that the payroll payments from Eldredge were not capital contributions, but compensation for employment with Starboard Side Landscaping. See Florence Dep. 34, 71–72 [Doc. No. 81-8]. He further contends that he, like Eldredge, paid several expenses out of pocket in support of the companies for which he was never reimbursed, but has offered no accounting of these alleged expenses. Id. at 56:15–20. Florence claims that Eldredge's capital investment in all was "a total of 17, 18,000." Id. at 33:22–23.

On January 5, 2018, after development of the ProWell device was complete, Florence assigned the '563 Patent application, which included the "full and exclusive right to the said invention, and the entire rights, title and interest in and to any and all Patents which may be granted therefore," to JT IP. JT IP Assignment 2 [Doc. No. 81-3]. On January 6, 2018, Florence filed his formal patent application. '563 Patent 1 [Doc. No. 81-5].

In mid-2018, Eldredge failed to secure additional required financing for the joint venture. Am. Compl. ¶¶ 52–57 [Doc. No. 22].[7]

On July 30, 2019, the '563 Patent was granted by the PTO. '563 Patent 1 [Doc. No. 81-5]. Florence was also able to secure financing and in August 2019, Florence and Eldredge met twice to discuss a way forward. See Florence Dep. 135–37 [Doc. No. 81-8]. Florence informed Eldredge that he had found two new investors—Scott Pack and Bill Daniels—and that he wanted to negotiate a new deal. Id. Florence offered Eldredge three options: (1) that they "reconcile [their] accounts and receive a return on [their] investments; (2) that Eldredge "stay in for a 10% equity consideration" along with Pack, Daniels, Florence, and Florence's daughter, Kimberly Perry; or (3) that if no agreement could be reached, Eldredge and Perry seek outside mediation to resolve any disagreements during dissolution. Florence Letter 2 [Doc. No. 97-2]. On August 20, Eldredge informed Florence that he would not accept any deals and re-asserted himself as a 50% owner of JT IP. Eldredge Email [Doc. No. 97-4]; see also Eldredge Dep. 50:16–19 [Doc. No. 78-3].

---

[7] Florence contends that in July 2018, he began to search on his own for financing and that Eldredge had informed Florence he was resigning from the endeavor. Florence Letter 1 [Doc. No. 97-2].

On October 1, 2019, Florence filed an assignment of the '563 Patent to FloPack, LLC

("FloPack"). FloPack Assignment [Doc. No. 81-4]. Florence, Perry, Daniels, and Pack

established FloPack in October 2019. Florence Dep. 139:14–15 [Doc. No. 81-8]; Secretary of the

Commonwealth of Massachusetts Corporations Division,

corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (last visited Sept. 8, 2024). The

FloPack Memorandum of Understanding, executed on October 4, 2019, states that "Florence has

acquired U.S. Patent and Trademark rights to a certain water management device known as the

Pro-well, Patent No. U.S.10,364,563 B1." FloPack Memorandum of Understanding ("MOU")

[Doc. No. 99]; see id. at 4 (for execution date).

Eldredge and Florence value the '563 Patent at $1,000,000. Statement of Facts ("SOF")

¶ 178 [Doc. No. 97].

> 2.      Counts Against Florence Only

>> a.      Breach of Fiduciary Duty (Count V)

To establish a claim for breach of fiduciary duty "under Massachusetts law, a plaintiff

must show (1) the existence of a duty of a fiduciary nature, based upon the relationship of the

parties, (2) breach of that duty, and (3) a causal relationship between that breach and some

resulting harm to the plaintiff." Amorim Holding Financeria, S.F.P.S, S.A. v. C.P. Baker & Co.,

Ltd., 53 F. Supp. 3d 279, 295 (D. Mass. 2014) (citing Hanover Ins. Co. v. Sutton, 46 Mass. App.

Ct. 153, 163-64, 705 N.E.2d 279 (1999)); Webb v. Injured Workers Pharmacy, LLC, 2023 WL

5938606, at *5 (D. Mass. Sep. 12, 2023).

Defendant Florence argues that (i) JT IP "did not function as a company," (ii) Florence

owed no fiduciary duty, (iii) Plaintiffs have not articulated what the breach was, and (iv)

Eldredge's prior breach in failing to pay the promised $50,000 relieved Florence from fiduciary

liability. See Defs.' Mem. ISO Mot. 12–13 [Doc. No. 93]. The court considers each of Florence's arguments in turn.

i.      JT IP is an Established Legal Entity

In support of his argument that JT IP was not an established company, Florence points to the absence of an operating agreement, bank accounts, formal meetings or votes, tax returns, property ownership, or timely-filed reports. Id. at 13.

Defendants challenge the Operating Agreement of JT IP produced by Plaintiffs, noting that Eldredge has not produced the original copy of the document; that Florence does not recall signing the Operating Agreement for JT IP, Florence Dep. at 166 [Doc. No. 81-8]; and that Attorney McGonagle never witnessed any execution and has no executed copy, Aff. of John McGonagle ¶ 4–6 [Doc. No. 94-2].[8] For purposes of summary judgment, however, the authenticity of the signed copy here is a disputed fact. Moreover, even if it was undisputed that the parties never finalized and executed the draft operating agreement, Florence offers no legal authority to support his reasoning that the absence of an operating agreement results in an LCC's dissolution. Instead, M.G.L. ch. 156C, s. 26(d), explicitly provides a method for control and decision-making if an LLC does not have an operating agreement, mandating that each manager has an equal vote.

---

[8] Defendants also contend that they can produce an expert report from "Wendy Carlson, Expert Document Examiner," who can eliminate Florence as the signer of the purported Operating Agreement. Defs.' Mem. ISO Mot. for SJ 11 [Doc. No. 93]. No such report is part of the summary judgment record, and in any event, whether such a report would be sufficiently reliable is of some debate. See McCrory v. Alabama, 144 S. Ct. 2483, 2484 (2024) (J. Sotomayor, dissenting) (noting that the Report from the National Academy of Science's National Research Council, Strengthening Forensic Science in the United States: A Path Forward (2009) (NAS Report) singled out as scientifically unsound disciplines, including handwriting comparisons, based on an expert's subjective interpretation (as opposed to analysis in a laboratory).

Nor does the undisputed absence of bank accounts, formal meetings or votes, tax returns, property ownership, or timely filed reports support the claimed dissolution. It is undisputed that JT IP was a registered LLC within Massachusetts that had been formed in compliance with the state's requirements for LLC formation. JT IP Cert. of Organization [Doc. No. 22-4]; Florence Dep. 28:3–8 [Doc. No. 81-8]; see also M.G.L. ch. 156C § 12 (stating that an LLC "is formed at the time of the filing of the initial certificate of organization in the office of the state secretary"). Dissolution of an LLC is dictated by an exhaustive list provided in M.G.L. 156C § 43.[9] None of Florence's reasons for JT IP's failing to operate as a company is mentioned in § 43. Nor does Florence point to any of the § 43 dissolution events in support of his argument.

Therefore, since it is undisputed that JT IP was registered as an LLC and that none of the statutorily recognized events giving rise to dissolution has occurred, a jury could find that JT IP is (and was at all relevant times) an established legal entity.

---

[9] M.G.L.A. 156C § 43 states in its entirety:

A limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:

(1) the time specified in the operating agreement;
(2) the happening of an event as specified in the operating agreement;
(3) the written consent of all members;
(4) with respect to a limited liability company formed prior to January 1, 1997, except as provided in a written operating agreement, the death, insanity, retirement, resignation, expulsion, bankruptcy or dissolution of a member or the occurrence of any other event which terminates the membership of a member in the limited liability company unless the business of the limited liability company is continued either by the consent of all the remaining members within ninety days following the occurrence of any such event or pursuant to a right to continue stated in a written operating agreement; or
(5) the entry of a decree of judicial dissolution under section forty-four.

ii.      Florence's Fiduciary Duty

The next question is whether Florence owed a duty. As Plaintiffs correctly point out,

members of "close corporations" owe a duty of "utmost good faith and loyalty." Allison v.

Ericksson, 479 Mass. 626, 636 (2018). This is because close corporations "involve a small

number of owners, who are 'quite dependent on one another for the success of the enterprise[,]

. . . [therefore] the relationship among the stockholders must be one of trust, confidence and

absolute loyalty if the enterprise is to succeed." Id. at 635–26 (quoting Donahue v. Rodd

Electrotype Co. of New England, Inc., 367 Mass. 578, 587 (1975)). A close corporation is

defined as having (1) a small number of stockholders; (2) no ready market for the corporate

stock; and (3) substantial majority stockholder participation in the management, direction and

operations of the corporation." Brodie v. Jordan, 447 Mass. 866, 868-69, 857 N.E.2d 1076

(2006). Not all LLCs are "close corporations." Allison, 479 Mass. at 636 n.14. LLCs are

"creatures of contract," and it is a fact-intensive inquiry, "depending on the way in which a

particular LLC is structured," whether the "close corporation" doctrine also applies to an LLC.

Id. at 636–37.

Here, JT IP was structured such that the close corporation doctrine applies. Florence was

indisputably one of two members of JT IP. Cert. of Org. [Doc. No. 22-4]. Further, Florence and

Eldredge are the only two shareholders, no market exists for JT IP stock, and Eldredge and

Florence managed virtually every aspect of JT IP's operations. Therefore, because a jury could

find that Florence was (and remains) a member of JT IP (a close corporation), he is not entitled

to summary judgment on the ground that he owed no duty of utmost good faith and loyalty.

iii.     The Breach of Fiduciary Duty

Florence next contends that Plaintiffs have failed to identify any breach. Defs.' Mem.

ISO Mot. 12 [Doc. No. 93]. This is incorrect on its face. Plaintiffs have alleged that Florence's

assignment of the '563 Patent, valued at $1,000,000 by both parties,[10] to FloPack was to JT IP's

detriment. Mem. ISO Pls.' Mot. for SJ 7 [Doc. No. 96]; Am. Compl. ¶¶ 71–74 [Doc. No. 22];

Mem. ISO Pls.' Mot. for SJ 8 [Doc. No. 29]. Since Plaintiffs have alleged Florence breached his

duty of utmost good faith and loyalty in attempting to assign the '563 Patent to FloPack,

Florence's argument fails.

iv.     Eldredge's Alleged Prior Breach

Defendants argue that even if Florence owed JT IP a fiduciary duty, any breach was

absolved by Eldredge's prior breach in failing to pay Florence the $50,000 that was promised.

Defs.' Mem. ISO Mot. 12–13 [Doc. No. 93] (citing Telegram Corp. v. Marketwatch.com, Inc.,

444 F.3d 1, 11 (1st Cir. 2006)). But the nature of Eldredge's payments to Florence are disputed

facts not answerable at summary judgment.

In sum, because a jury could find that Florence owed JT IP a fiduciary duty and that his

actions constituted a breach, and because there remains an open question of fact as to whether he

was previously absolved of that duty by the actions of Eldredge, Florence's Motion for Summary

Judgment as to Count V is DENIED.

b.     Fraud and Misrepresentation (Count VIII)

Under Massachusetts law, a plaintiff alleging fraud and misrepresentation must establish

(i) that the defendant made a false statement of material fact (ii) to induce the plaintiff to act (iii)

---

[10] See SOF ¶ 178 [Doc. No. 97].

and that the plaintiff reasonably relied upon the statement (iv) to his or her detriment. Rodi v. Southern New England School of Law, 389 F.3d 5, 13 (1st Cir. 2004) (citing Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77, 575 N.E.2d. 70 (1991)). Additionally, claims of fraudulent misrepresentation require a heightened pleading standard wherein the plaintiff must allege with particularity "the who, what, where, and when of the false or fraudulent representation." Rodi, 389 F.3d at 15.

Florence argues that Eldredge has failed to meet this heightened pleading standard in the complaint. See Defs.' Mem. ISO Mot. 14–15 [Doc. No. 93]. Further, Florence argues that Eldredge failed to identify fraudulent actions throughout discovery. These arguments are without merit. First, the Amended Complaint states with adequate specificity a number of allegations of fraud. Am. Compl. ¶¶ 47, 82–84, 124–29 [Doc. No. 22].

Second, during discovery, Eldredge asserted that Florence misled him into believing he did not have to be included as a co-inventor on the application for the '563 Patent to protect his interest. Mem. ISO Pls.' Mot. for SJ 9 [Doc. No. 96]; see Eldredge Dep. 126:20–24 [Doc. No. 78-3]. Eldredge also asserted that Florence promised him 50% ownership of JT IP and did not update the Operating Agreement to reflect this agreement. See Eldredge Dep. 126:30–31 [Doc. No. 78-3]. Eldredge has also presented evidence that Florence attempted to unilaterally remove the '563 Patent assignment from JT IP and re-assign it to FloPack without telling Eldredge. See Am. Compl. ¶¶ 71–74, 82–83, 111 [Doc. No. 22]; see generally Eldredge Dep. 21:17–20 [Doc. No. 78-3] (indicating Eldredge's desire not to assign the '563 Patent to FloPack).

Whether Florence made the representations as Eldredge claims is a fact-intensive inquiry for which there is no conclusive answer at this point. Eldredge's own testimony that Florence made these statements to him is enough to create a genuine dispute of material fact and, as such

summary judgment is not appropriate. Florence's <u>Motion for Summary Judgment</u> as to Count

VIII is DENIED.[11]

          3.          Counts Against FloPack and Perry Only

                    a.          Intentional Tortious Interference with a Contract (Count IX)

To prevail on a claim of tortious interference with a contract in Massachusetts, a plaintiff

must demonstrate that: "(1) he [or she] had a contract with a third party; (2) the defendant

knowingly induced the third party to break that contract; (3) the defendant's interference, in

addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed

by the defendant's actions." <u>Psy-Ed Corp. v. Klein</u>, 459 Mass. 697, 715–16, 947 N.E.2d 520

(2011).

Defendants FloPack and Perry argue that Eldredge has failed to identify what contract

they interfered with. Defs.' Mem. ISO Mot. 15 [Doc. No. 93]. Plaintiffs' <u>Amended Complaint</u>, as

well as all their supporting memoranda submitted throughout litigation, however, have very

clearly articulated the contract in question is the assignment of the '563 Patent to JT IP.

Defendants' motion for summary judgment has merit, nonetheless, as Eldredge has not provided

any evidence whatsoever of contractual interference.

Plaintiffs allege that "FloPack and Perry knew of the agreement between Florence and

Eldredge, knew of the ownership of the '563 patent by JT IP, [and that] FloPack and Perry[]

---

[11] Eldredge also asserted several other theories of fraud in the <u>Amended Complaint</u>. Am. Compl. ¶¶ 18, 20–21, 23, 56–60, 67 [Doc. No. 22]. Specifically, he alleged that Florence promised to assign two trademarks to JT IP, that he would obtain funding and did not do so, that he would create a website and did not do so, and that he would set up emails and did not do so. <u>Id.</u> Discovery did not yield any evidence that these allegations were motivated by the requisite intent on the part of Florence to constitute fraud, let alone that these allegations are true.

agree[d] to pay Florence for the '563 patent while they knew it was subject to said agreement and owned by JT IP." Mem. ISO Pls.' Mot. for SJ 10–11 [Doc. No. 96]. To support this allegation, Plaintiff points to the existence of the assignment from Florence to JT IP, the existence of the assignment from Florence to FloPack, Florence's deposition acknowledging the assignment to FloPack, and FloPack's MOU asserting that Florence had acquired rights to the patent. SOF ¶¶ 159, 177 [Doc. No. 97]; JT IP Assignment [Doc. No. 81-3]; FloPack Assignment [Doc. No. 81-4]; Florence Dep. 165:11–23 [Doc. No. 81-8]; FloPack MOU 1 [Doc. No. 99].

While this evidence supports the existence of a contract between Florence and JT IP, it does not support the conclusion that FloPack or Perry "induced" Florence into subsequently attempting to assign the patent to FloPack. Eldredge contends that FloPack and Perry were aware of the assignment to JT IP, of Eldredge's 50% voting interest in JT IP, and that they knew Eldredge had not voted in favor of assigning the patent. Mem. ISO Pls.' Mot. for SJ 10–11 [Doc. No. 96]; SOF 160-161 [Doc. No. 97]. But the only support offered by Eldredge for this argument is references to conclusory allegations in the Amended Complaint [Doc. No. 22], or to correspondence between Florence and Eldredge, none of which establish knowledge on the part of *FloPack* or *Perry*. That FloPack and Perry had a business relationship with Florence and knew of Florence's assignment contract with Eldredge is not alone enough to conclude that FloPack and Perry maliciously engaged with Florence or were in cahoots to interfere with the assignment contract to JT IP.

Because Eldredge has failed to provide any evidence to support its claim of intentional interference with a contract,[12] no triable issue of fact has been presented, and Defendants' Motion for Summary Judgment as to Count IX is GRANTED.

b.    Intentional Interference with Prospective Economic Advantage (Count X)

A claim for intentional interference with prospective economic advantage has essentially the same elements as the previous claim for intentional interference with a contract. To support such a claim, a plaintiff must demonstrate: (1) the existence of a business relationship from which plaintiff might have benefited; (2) the defendant intentionally interfered with the relationship (3) the interference was improper in motive or means; and (4) the plaintiff was harmed by the interference. Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass. App. Ct. 34, 38, 815 N.E.2d 241 (2004).

Defendants FloPack and Perry contend that Eldredge has not articulated the relationship Eldredge had with Florence, nor provided evidence establishing what FloPack and Perry knew of the alleged relationship, what their intent was, or what improper means were used. Defs.' Mem. ISO Mot. 16 [Doc. No. 93]. Eldredge asserts that the relationship that existed was the agreement between he and Florence regarding the '563 Patent, Mem. ISO Pls.' Mot. for SJ 10–11 [Doc. No. 96], which is allegedly apparent from the record. Eldredge's theory of interference is that FloPack and Perry, while aware of this agreement, agreed to pay Florence for assignment of the '563 Patent anyway, and that this has caused economic damage to Eldredge. Id.

_____

[12] Eldredge also asserted a theory of interference with contracts with customers. Am. Compl. ¶ 131 [Doc. No. 22]. Defendants highlight in their memorandum that Eldredge did not provide any evidence of this theory. Def.'s Mem. 15 [Doc. No. 93]. In response, Eldredge provided no evidence to support the claim.

Eldredge has failed to provide any evidence supporting this theory, which is, for all intents and purposes, identical to Eldredge's theory for contractual interference, see supra Part III.B.3.a, and this claim, therefore, fails for the same reasons. Even taking as true Eldredge's contention that FloPack and Perry had intimate knowledge of the inner workings of Eldredge's and Florence's relationship, that alone is not enough to conclude that FloPack and Perry simultaneously working with Florence is evidence of an intent to thwart that relationship. Eldredge has not presented a genuine dispute of material fact as to this claim[13] and therefore, Defendants' Motion for Summary Judgment as to Count X is GRANTED.

c.      Violations of M.G.L. ch. 93A (Count XI)

JT IP has alleged as the final claim in this case that Florence and FloPack engaged in unfair and deceptive business practices with JT IP as defined in M.G.L. ch. 93A §§ 2 and 11. Am. Compl. ¶¶ 140–45 [Doc. No. 22]. In order for a violation under §§ 2 and 11 to hold water, a commercial interaction must have taken place between the parties and they must have been acting within a business context. Linkage Corp. v. Trustees of Boston U., 425 Mass. 1, 22–23, 679 N.E.2d 191 (1997). FloPack and Perry rely on Linkage in arguing that no commercial interaction ever took place between them and JT IP, and that the claim must therefore be dismissed. Defs.' Mem. ISO Mot. 16–17 [Doc. No. 93]. Their reliance is not misplaced. Nothing in the record indicates that JT IP interacted with FloPack and Perry in any way, let alone in a business context.

---

[13] As with the contractual interference claim, Eldredge also asserted a theory based on his relationship with prospective customers. Am. Compl. ¶ 136 [Doc. No. 22]. Defendants here have also highlighted the lack of evidence for this theory. Defs.' Mem. 16 [Doc. No. 93]. Again, Eldredge provided no rebuttal, and this theory is likewise foreclosed.

JT IP's only rebuttal to this argument is that the requirements of <u>Linkage</u> aren't explicitly set forth in the statute. Mem. ISO Pls.' Mot. for SJ 11 [Doc. No. 96]. However, statutes provide only a portion of the law, with case law filling in the gaps where further refinement is required. Further, in making its argument, JT IP states that "the word 'transaction' does not appear in the language of section 11 anywhere." <u>Id.</u> This is wrong, as "transaction" appears three times in Section 11, further indicating the legislature's intent to include such a requirement. <u>See</u> M.G.L. ch. 93A § 11.

Since JT IP has failed to present any evidence of a commercial interaction with FloPack and Perry, no genuine dispute of material fact exists. Defendants' <u>Motion for Summary Judgment</u> as to Count XI is, therefore, GRANTED.

4.      Counts Against All Defendants

a.      Conversion (Count VI)

"The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment." <u>Blake v. Prof. Coin Grading Serv.</u>, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) (quoting <u>In re Hilson</u>, 448 Mass. 603, 611 (2007)). Defendants argue here that intangible property, such as a patent, cannot be the subject of a conversion claim as a matter of law. Defs.' Mem. ISO Mot. 13–14 [Doc. No. 93]; <u>see Blake</u>, 898 F. Supp. 2d at 386.

"Whether or not Massachusetts limits conversion claims to tangible property is debatable." <u>In re TJX Cos. Retail Sec. Breach Litig.</u>, 564 F.3d 489, 499 (1st Cir. 2009). However, "[g]enerally, intangible property not merged in, or evidenced by, a document may not be the proper subject matter of conversion." <u>Wozniak & Padula, P.C. v. Gilmore, Rees, Carlson & Cataldo, P.C.</u>, 2005 Mass. App. Div. 49 (Dist. Ct. 2005). JT IP argues that the relevant

sections of the Massachusetts General Laws ("M.G.L.") were amended in 2001 and excluded patents from the definition of intangible property. See Mem. ISO Pls.' Mot. for SJ 7–8 [Doc. No. 96]. JT IP contends that Blake, decided in 2012, was incorrect in its analysis because it cited to a 1996 decision that, in turn, relied upon a version of the M.G.L rendered obsolete by the 2001 amendments. However, JT IP is incorrect in portraying the 2001 amended version of the M.G.L. as current. See id. at 8. The relevant sections of the M.G.L. were amended again in 2013. St.2013, c. 30, §§ 48 to 52, 84 to 89J, eff. July 1, 2013. A comment to the current version states that "general intangible" property includes "various categories of intellectual property." See comment 5.d, Mass. Gen. Laws Ann. ch. 106, § 9-102 (West). The comment specifies what's excluded from general intangible property, and none of those exclusions encompass intellectual property. See id. (listing "commercial tort claims, deposit accounts, and letter-of-credit rights" as excluded from the definition of general intangible property).

This court's conclusion is bolstered by Massachusetts state courts' guidance on the types of intangible properties that can be converted. A theory of conversion "does not extend to claims to intangible personal property that does not merge with or is not evidenced by any sort of document, such as a bankbook. In such circumstances, the right of possession and dominion so inheres in the physical document that possession of that document governs the exercise of the right itself. Conversion of a bankbook, for example, not only deprives the depositor of that document, but, more importantly, prevents exercise of the right it embodies-the depositor cannot withdraw his balance." Discover Realty Corp. v. David, 2003 Mass. App. Div. 172, 175 (2003). In other words, intangible property can only serve as the basis for a conversion claim if ownership of it is inexorably tied to some physical document.

Specifically, ownership of a patent is not so linked to a physical document in this regard. Rather, ownership of a patent is a matter of legal standing on record with the PTO and is not something that one can physically take ownership of. As such, to assert a right over a patent one believes has been taken by another, the remedy is to seek a judgment from the court system, as JT IP has done. Therefore, patents are the type of intangible physical property that are not subject to claims of conversion.

This is also the most logical outcome because JT IP is seeking declaratory judgment on ownership of the '563 Patent, which will rule the conversion question moot regardless of the outcome. Either JT IP owns the patent, in which case the patent has not been converted, or JT IP does not own the patent, in which case Defendants had the right to it. The appropriate channel to settle a dispute over patent ownership is through declaratory relief, not through a conversion claim. Based on the foregoing reasons, Defendants' <u>Motion for Summary Judgment</u> as to Count VI is GRANTED.

b.      Unjust Enrichment (Count VII)

To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. <u>Biltcliffe v. CitiMortgage, Inc.</u>, 952 F. Supp. 2d 371, 380 (D. Mass. 2013), <u>aff'd</u>, 772 F.3d 925 (1st Cir. 2014).

Defendants' only argument in support of summary judgment is that JT IP has not alleged what benefit was conferred on them by JT IP. Defs.' Mem. ISO Mot. 14 [Doc. No. 93]. This is incorrect. JT IP has alleged that assignment of the '563 Patent to FloPack without compensation

24

constitutes unjust enrichment. Am. Compl. ¶¶ 71–74, 121–23 [Doc. No. 22]. Defendants' <u>Motion for Summary Judgment</u> as to Count VII is DENIED.

c.  Declaratory Judgment (Count IV)

Defendants' argument for summary judgment on JT IP's count seeking declaratory judgment is threefold. They argue that "(i) Florence, if anything, assigned an application for a patent, not the patent that was ultimately issued; (ii) the assignment of the patent would be lacking consideration; and (iii) equitable relief is unavailable due to the doctrine of unclean hands." Defs.' Mem. ISO Mot. 8 [Doc. No. 93]. Each of these points will be addressed in turn.

i.  Application vs. Patent

In arguing that Florence's assignment of the '563 Patent application did not include assignment of the resulting invention, Defendants rely on <u>Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.,</u> 266 U.S. 342, 348 (1924), and <u>Minerva Surgical, Inc. v. Hologic, Inc.,</u> 141 S. Ct. 2298 (2021). Defs.' Mem. ISO Mot. 8 [Doc. No. 93]. Defendants argue that <u>Westinghouse</u> and <u>Formica</u> stand for the notion that a patent application and the resulting invention must be distinguished because "the right conveyed in such an assignment is much less certainly defined than that of a granted patent" as the patent "claims are subject to change by curtailment or enlargement by the Patent Office." <u>Westinghouse</u>, 266 U.S. at 352–53. While Defendants are correct in their understanding of this distinction, the distinction has no relevance here.

As Plaintiffs correctly point out, <u>Westinghouse</u> and <u>Minerva</u> provide this distinction exclusively to address the doctrine of assignor estoppel. Mem. ISO Pls.' Mot. for SJ 3 [Doc. No. 96]. "The equitable basis of assignor estoppel defines its scope: The doctrine applies only when an inventor says one thing (explicitly or implicitly) in assigning a patent and the opposite in

25

litigating against the patent's owner." <u>Minerva</u>, 141 S. Ct. 2298 at 2304. "Courts have long

applied the doctrine of assignor estoppel to deal with inconsistent representations [by the

assignor] about a patent's validity." <u>Id.</u> Thus "[t]he doctrine applies . . .  only when[] the

assignor's claim of invalidity contradicts explicit or implicit representations he made in assigning

the patent." <u>Id.</u> at 2302. Defendants' attempt to use this doctrine that limits an assignor's

inconsistent claims as a sword against the assignee is frivolous.

Finally, as this court noted in an earlier order, the assignment here was not limited to the

patent application:

> by its terms, Florence's 2018 assignment of the '563 Patent Application to JT IP,
> "assign[ed] and transfer[ed] unto said assignee [JT IP] the full and exclusive right
> to the said invention, <u>and the entire rights, title and interest in and to any and all</u>
> <u>Patents which may be granted therefore</u>, anywhere in the world."

Mem. & Order 4 [Doc. No. 36] (quoting Am. Compl., Ex. G, Patent Assignment 2–3 [#22-8])

(emphasis added).

### ii.     Consideration

Defendants also contend that the assignment itself is invalid as it constitutes a contract

lacking consideration. Defs.' Mem. ISO Mot. 9–10 [Doc. No. 93]. Defendants argue that i)

nominal payment of $1.00 is not sufficient consideration for a patent assignment, and ii) if the

agreed-upon payments from Eldredge to Florence also constituted consideration, such

consideration was never received by Florence.

In Massachusetts, contracts must be supported by consideration to be enforceable.

<u>Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth.</u>, 357 Mass. 40, 42–43, 255 N.E.2d

793 (1970). Essentially, in order for a contract to have valid consideration, the contract must be a

bargained-for exchange in which there is a legal detriment of the promisee or a corresponding

benefit to the promisor. <u>Id.</u> Courts will not inquire into adequacy of consideration so long as

consideration is otherwise valid to support promise. Stevens v. Thacker, 550 F. Supp. 2d 161 (D. Mass. 2008) (quoting 7 Williston on Contracts § 21). Nominal consideration will suffice to support a contract. Davis v. Wells, 104 U.S. 159, 168, 26 L.Ed. 686 (1881).

The court finds the consideration valid and the contract enforceable. The only legal authorities that Defendants cite regarding consideration for a patent assignment are Westinghouse and Minerva. However, those cases only raise without answering any question concerning consideration, and even that question concerned assignor estoppel, as discussed above—not the validity of an assignment. And notably, the assignment document between Florence and FloPack for the '563 Patent contained exactly the same consideration as the assignment between Florence and JT IP, "of the sum of one dollar ($1.00) . . .  and other good and valuable consideration." Compare FloPack Assignment at 3 [Doc. No. 81-4], with JT IP Assignment at 3 [Doc. No. 81-3]. Therefore, either the consideration for the FloPack assignment is also invalid, or it is valid as to the JT IP assignment as well.

Defendants argue as their second point that the "other good and valuable consideration" was the payments Eldredge was to make to Florence, which they allege were never paid in full. Defs.' Mem. ISO Mot. 9–10 [Doc. No. 93]. Defendants cite to Thomas v. Webster Spring Co., Inc., 638 N.E. 2d 51, 53 (Mass. App. 1994), which states that when a party fails to deliver consideration, the assignee is absolved of the assignment. It follows, Defendants say, that the assignment to JT IP should be invalidated because Eldredge only delivered $15,000 of the promised $50,000 to Florence. Defs.' Mem. ISO Mot. 9 [Doc. No. 93]. They argue that any payments from Eldredge beyond that amount were as compensation for Florence's employment with Starboard Side Landscaping, and not associated with his joint endeavor with Florence. Florence Dep. 34, 71–72 [Doc. No. 81-8]. Plaintiffs counter with two arguments. They argue

27

first that the dispute between the parties over the payment of the $50,000 predated the assignment by a year. See Pls.' Opp. to Defs.' Mot. 5 [Doc. No. 96]. Second, they argue that Eldridge's payments were, in fact, as investments in JT IP and New Brand, and that Florence never performed work for Starboard Side Landscaping. Eldredge Dep. 60:21–23, 95–96 [Doc. No. 78-3].

But these arguments are addressed to Eldredge's rights, not JT IP's. The further question of Eldredge's rights, as opposed to JT IP's rights, is not part of this cause of action.

iii.      Unclean Hands

Defendants' third argument for declaratory relief in their favor is that "Eldridge's unclean hands bar his equitable claim." Defs.' Mem. ISO Mot. 11 [Doc. No. 93]. The doctrine "applies when the claimant's misconduct is directly related to the merits of the controversy between the parties." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 241 (1933). Defendants argue that Eldridge cannot produce the original copy of the purported Operating Agreement of JT IP. They point the court to Florence testifying he never signed such an agreement, Attorney McGonagle testifying that he never witnessed any execution and has no executed copy, and that they can produce an expert report from "Wendy Carlson, Expert Document Examiner," who can eliminate Florence as the signer of the purported Operating Agreement. Defs.' Mem. ISO Mot. for SJ 11 [Doc. No. 93].

But the claimant here is JT IP—not Eldredge—and Defendants have pointed to no wrongdoing by *JT IP* that undermines the 2018 assignment to JT IP. Defendants' witnesses do not dispute that JT IP was a limited liability company that was in existence at the time of the assignment, and that there was at least a draft version of the Operating Agreement at the time of the assignment. Indeed, Florence testified that he has seen several iterations of the Operating

28

Agreement, Florence Dep. 30:3–9 [Doc. No. 81-8], and Attorney McGonagle testified that he distributed a draft operating agreement to Florence and Eldridge, Aff. of John McGonagle ¶ 3 [Doc. No. 94-2].

While there is certainly a dispute as to whether Plaintiffs have offered a forged document, or whether Florence did indeed sign the document, that dispute creates a genuine issue of material fact here that this court cannot resolve on a summary judgment posture.

Defendants provide another theory of misconduct which attempts to implicate Eldredge's filing of annual reports for JT IP "unilaterally" and on "the eve of Defendants' Motion." Defs.' Mem. ISO Mot. 12 [Doc. No. 93]. Defendants also state that Eldredge, in doing so, changed JT IP's information in filings with Secretary of the Commonwealth to reflect himself as the resident agent and manager. Id. In making these contentions, however, Defendants have not made any argument as to how these actions constitute any kind of misconduct other than an accusation that Eldredge's actions were "in a continuing attempt to wrest Florence's patent away from him" for which they provide no support. Id.

In summary, Defendants' Motion for Summary Judgment as to Count IV is DENIED because of their unsuccessful invocation of assignor estoppel and their flawed argument that there was no consideration for the '563 assignment to JT IP.

C.      Plaintiff's Motion for Partial Summary Judgment

JT IP requests declaratory judgment that Florence's 2018 assignment of the '563 patent to JT IP is valid and that Florence's subsequent assignment to FloPack is invalid. Mem. ISO Pls.' Mot. for SJ 4–5 [Doc. No. 96]. Here the court views the record in the light most favorable to Defendants and draws all reasonable inferences in their favor.

As described above, the record is undisputed that Defendant Florence had assigned the '563 patent—not just its application—JT IP and that this assignment was valid. See supra Part III.B.4.c.i. Moreover, the record is undisputed that there was valid consideration for this assignment between JT IP and Florence, where Defendants' arguments as to the nature of payments from Eldredge and from Starboard Side Landscaping are not germane to the consideration inquiry between JT IP and Florence. See supra Part III.B.4.c.ii.

However, Defendants have raised a genuine dispute of material fact as to whether Eldredge forged Florence's signature on the purported JT IP Operating Agreement. Based on this dispute, summary judgment for JT IP as to Count I is DENIED.

### IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED because the court can exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs' Motion for [Partial] Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is DENIED as to Counts IV, V, VII, and VIII, and GRANTED as to Counts VI, IX, X, and XI.

IT IS SO ORDERED.

September 12, 2024                                   /s/ Indira Talwani_____
                                                     United States District Judge