UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JT IP HOLDING, LLC AND <br> JEFFREY S. ELDREDGE, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS FLORENCE, FLOPACK, LLC <br> AND KIMBERLY PERRY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 1:20-cv-10433-IT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to the Court's Procedural Order Regarding Pretrial/Trial dated May 13, 2025 and Local Rule 16.5(d), the Plaintiffs, JT IP Holding, LLC ("JT IP") and Jeffrey S. Eldredge ("Eldredge"), and the Defendants, Thomas Florence ("Florence"), FloPack, LLC ("FloPack") and Kimberly Perry ("Perry"), by and through counsel, and hereby file this Joint Pretrial Memorandum.

*1. Concise Summary of the Evidence*

**A. Plaintiffs' Position**

Florence is inventor on a Patent for a dry well system that is the predecessor to the dry well system that is the subject of the '563 Patent. The '563 Patent covers this new dry well called the "ProWell." Florence approached Eldredge with the idea to upgrade the previous dry well such that a new patent could be obtained and the resulting ProWell product marketed and sold. Florence was to provide the experience with dry wells, marketing, sales, corporations, and obtaining intellectual property, and Eldredge was to provide financing and his extensive experience installing dry wells in

his landscaping business. There were other ideas or inventions that were originally contemplated as part of the cooperative effort, but never got off the ground.

Over time Eldredge noticed that he was being left out of integral parts of the situation. Florence took over direct communications with the engineers, possible investors, and others. Nothing seemed to be getting accomplished and meanwhile the amount of money Eldredge was pouring into the project was increasing. Florence tried to hire employees prior to any outside investment being landed or any product being ready for marketing and sale. Eventually, Eldredge called for a company meeting to talk about these issues. Florence and Perry attended the meeting that took place on November 5, 2019. Unbeknownst to Eldredge, Florence had already unilaterally "assigned" the '563 Patent to his daughter's company on October 1, 2019, prior to this meeting, (See Exhibit F), despite the previous Assignment to JTIP. Florence and Perry then executed the Agreement concerning FloPack's payment for the assignment of the '563 Patent on November 16, 2019. In fact, all involved with the reassignment scheme were aware that there was a dispute concerning the ProWell when they signed their Memorandum of Understanding on October 4, 2019.

The plaintiffs' also assert that Florence's unilateral assignment of the '563 patent to FloPack is invalid as there was no vote on the subject at JT IP the owner of the patent at the time of the transfer to FloPack and that, as such, the '563 patent should revert to the ownership of JT IP.

The plaintiffs' also assert that Florence made numerous statements of material fact and omissions of information such that they constitute unjust enrichment on the part of Florence, Perry, and FloPack.

The plaintiffs also assert that Eldredge met and exceeded his payment obligations under the agreement with Florence.

B. **Defendants' Position**

Florence is the holder of ten patents in the area of dry well products. Florence had originally patented a dry well product known as the "FloWell" in 1989. FloWell was well received worldwide and very profitable. In 2016, Florence invented a new improved drywell product and filed for a ProWell trademark thus providing 17 years of continuity for his intellectual property.

Even through Eldredge had no experience in intellectual property or product development, Florence was willing to partner with him due to their prior dealings. The intent was for Florence to conditionally assign his IP rights to his new invention to JTIP Holding, LLC ("JT IP"). Eldredge and Florence would launch a start-up business New Marketing, LLC ("NBM:) to market the new invention. Upon a successful launch of NBM, JTIP would provide NBM a license to market Florence's IP.

Florence and Eldredge established terms for an agreement in a memorandum of understanding and later formalized the agreement. Under the terms of the agreements, Florence agreed for the assignment of his IP, he was to be paid $150,000. Eldredge was to pay Florence a $50,000 good faith deposit and to pay NBM $100,000 when operational.

Upon signing their agreement Eldredge failed to provide the $50,000 to Florence, and only paid $15,000 to Florence at the inception of their business dealings, breaching his obligation to pay Florence from the very start. Despite promising to pay the entire balance of $30,000 in a few weeks, Eldredge never made the payment to Florence. The total amount of direct payments made from Eldredge to Florence was only $19,963.49.

In addition to the payment to Florence, Eldredge also committed to providing $150,000 seed money and to work with Florence to set up the NBM office and the rigorous up front

administrative process as well as pay half of the overhead expenses required to develop operations. Eldredge failed to do either.

In December 2016 the two LLC operating agreements were circulated. Eldredge and Florence endorsed the NBM agreement. Eldredge did not pay his $50,000 membership contribution to NBM as the operating agreement cited and required therein. They could not agree to the terms of the JT IP operating agreement and put off the endorsement until a later date.

Despite not being provided the money promised from Eldredge, Florence moved the NBM project forward with his personal resources. Florence set up a fully equipped office with conference space at his property and expense. Florence filed for and obtained a patent for his new invention and the ProWell trademark, acquired a Prowell internet domain, designed and developed molds with engineers, negotiated with manufacturers, and engaged industry contacts. Florence worked with graphic artists and prepared point of purchase, marketing and packaging materials, worked with a professional CFO and wrote a business plan for NBM. Florence had NBM positioned to commence with manufacturing and marketing Florence's IP. Eldredge's obligation to help in regards to these and other tasks never materialized. Eldredge filed this litigation alleging Florence failed to perform the work outlined in the foregoing for JT IP. In fact all the work as planned and intended was for NBM not JT IP and was completed by Florence at his expense.

Despite Eldredge claiming to have an original signed copy of the purported Operating Agreement for JT IP, no such agreement was ever produced. And Florence never signed the agreement, despite a signed copy being produced in this lawsuit.

JTIP did not have any bank accounts, did not hold any formal meetings or votes, did not file tax returns, did not own any real estate, did not maintain books and records, did not prepare

any financial statements and did not timely file annual reports for 2018 and 2019. Upon notice from the Commonwealth, Florence believed that JT IP was dissolved by operation of law. However, Eldredge unilaterally filed the delinquent annual reports for JT IP for 2018 and 2019 retroactively in August 2019, after learning the Florence's patent issued in July and shortly before this lawsuit was filed. He listed Florence as a member even though he knew that their business dealing had concluded and, in fact, a dispute had arisen between them.

While there was an assignment executed by Florence to JT IP, it was intended to be a conditional assignment required to be in place for the NBM license. The intent was to assign only the application while preparing to successfully launch NBM, not any resulting patent. Moreover, Florence did not intend for the assignment to be filed unless and until Eldredge satisfied his financial obligations to Florence, and launch NBM, which he never did.

During this time, as Florence worked alone to develop NBM, he also performed part time work and was paid approximately $110,000 as an employee through the payroll for Eldredge's company, Starboard Side Landscaping, which Eldredge later attempted to claim was payment for his interest in JT IP that he failed to satisfy. In fact, Florence was assisting Eldredge with his business so that Eldredge could eventually pay what was owed to Florence.

In July of 2018, due to Eldredge's failures to perform on his contractual obligations commitments as well as his insistence on a fifty percent ownership of Florence's patent, Florence told Eldredge he could no longer support the endeavor. He asked Eldredge to meet his commitments or it was time reconcile their accounts to settle and move on.

In August of 2018, Eldredge told Florence he could not afford to go forward and asked Florence if he could find other resources and reconcile their matters. To memorialize this parting

of their ways, Eldredge gave Florence a check for zero dollars at a meeting in Eldredge's office. Eldredge and Florence agreed to work out their affairs in the future and remain friends.

In July of 2019, Florence organized a financial arrangement with a family friend. After two unsuccessful meetings to settle their affairs in August 2019, Eldredge unilaterally paid JT IP's delinquent annual report fees. On the Commonwealth's registration forms Eldredge falsely named Florence as a member and listed Florence's address as JT IP's business location.

In November 2019, Eldredge and his attorney met with Florence and his daughter. The meeting did not resolve the issues and Eldredge commenced with this litigation.

### 2. *Facts Established by Pleadings/Stipulations/Admissions*

**Plaintiffs' Position**

1. Florence and Eldredge were two members of JT IP, LLC. (See Document #16, at pg. 2 of 16, first paragraph of the Background section).

2. The LLC is subject to an Operating Agreement that is Exhibit D to Plaintiffs' Complaint and Proposed Trial Exhibit 2. (See Document #16, at pg. 2 of 16, first paragraph of the Background section).

**Defendants' Position**

a. Florence is an individual residing at 803 Main Street, West Dennis, Massachusetts.
b. On July 30, 2019, the United States Patent and Trade Office ("USPTO") issued U.S. Patent No. 10,364,563 B1 (the "'563 Patent"), entitled "Runoff Water Management System," to Thomas Florence.
c. Florence had previously obtained a patent on a runoff water management system.
d. In May of 2017, Eldredge and Florence formed JT IP Holding, LLC (hereinafter "JTIP"), as a Massachusetts limited liability company, with each of them being a member and a manager.
e. Eldredge's capital contributions to JT IP were to be in cash.
f. Eldredge and Florence incorporated New Brand Marketing. LLC, with each of them being members and managers, with a 1/3 and 2/3 ownership respectively and 50% voting rights each, on December 2, 2016, to be used to Market the '563 Patent product.

    g. On January 8, 2018, Florence had himself removed as a manager of New Brand Marketing.
    h. FloPack, LLC, was formed as a Massachusetts limited liability company by the filing of its Certificate of Organization on October 18, 2019, with its office at 803 Main Street, West Dennis, MA 02670, (Florence's home address) with its only manager being Kimberly Perry.
    i. FloPack's Certificate of Organization states its general character of business as "To make, license, acquire, and market water management devices...."
    j. On the same day, October 18, 2019, with the same manager, office address, and incorporator as FloPack, LLC, Go-Well Marketing, LLC, was formed as a Massachusetts limited liability company by filing is Certificate of Organization.
    k. Go-Well's Certificate of Organization states its general character of business as "To make, license, acquire, and market water management devices...."
    l. The only patent assigned to FloPack, LLC, as recorded with the PTO, is the '563 patent.

3. ***Contested Issues of Fact***

**<u>Plaintiffs' Position</u>**

The plaintiffs reiterate the contested facts in their statement of material facts at summary judgment in document # 97, and in their opposition to the defendants' motion for summary judgment, document # 92, and also contest the following facts:

1. That Eldredge's capital contributions to JT IP were to be in cash.

2. That there was any intent was for Eldredge to focus on the management aspects of the endeavor, with Florence focusing on marking, product development and licensing.

3. That Eldredge failed to provide that $50,000 to Florence, and only paid $15,000 to Florence at the inception of their business dealings, breaching his obligation to Florence from the very start.

4. That the total amount of direct payments made from Eldredge to Florence was only $19,963.49.

5. That despite promising to pay an additional $5,000 in a matter of days after the initial $15,000 and the remaining $30,000 in a few weeks, Eldredge never made the payments to Florence.

7

6. That in addition to the payment to Florence, Eldredge also committed to providing $150,000 seed money and to assist with the rigorous up front administrative process required to develop operations that was not provided.

7. That a draft of an Operating Agreement for JT IP was circulated but never executed.

8. That Eldredge claimed to have an original signed copy of the purported Operating Agreement of JT IP Holding, LLC

9. That Florence never signed the JT IP operating agreement.

10. That Florence would never have agreed to an arrangement granting equal equity and voting rights because he believed it could potentially cause a stalemate with respect to his intellectual property in the event of a disagreement.

11. That Florence attempted to move the project forward with limited resources, including negotiating with manufacturers and planning for logistics.

12. That Florence set up an office with conference space at his expense and began the process of setting up permanent offices and that Eldredge's obligation to help in regards to these and other tasks never materialized.

13. While there was an assignment executed by Florence to JT IP, it was intended to assign only the application for the ProWell, not any resulting patent.

14. That Florence also performed work for Eldredge and was paid approximately $110,000 as an employee through the payroll for Eldredge's company, Starboard Side Landscaping.

15. That a final breakdown of the business arrangement between Florence and Eldredge occurred during in 2018 due to Eldredge's failures to perform, including his failure to pay

Florence the compensation agreed to, failure to assist with getting business operations running and at the same time persisting with a 50% ownership of Florence's patent.

16. That Florence and Eldredge agreed to conclude their business dealings.

17. That the check for zero dollars was to memorialize any conclusion of the business between Florence and Eldredge and that the two agreed to part ways.

18. That, due to some understanding that their business was concluded Florence undertook a new business arrangement with FloPack and assigned his patent to it.

19. That the intent was for Florence to conditionally assign his IP rights to his new invention to JTIP Holding, LLC.

20. That upon a successful launch of New Brand Marketing, LLC, , JTIP would provide NBM a license to market Florence's IP.

21. That Florence agreed for the assignment of his IP, he was to be paid $150,000.

22. That Eldredge was to pay Florence a $50,000 good faith deposit and to pay NBM $100,000 when operational.

23. That in addition to the payment to Florence, Eldredge also committed to providing $150,000 seed money and to work with Florence to set up the NBM office and the rigorous up front administrative process as well as pay half of the overhead expenses required to develop operations and that Eldredge failed to do either.

24. That Eldredge did not pay his $50,000 membership contribution to NBM as the operating agreement cited and required therein.

25. That Eldredge and Florence could not agree to the terms of the JT IP operating agreement and put off the endorsement until a later date.

26. That despite not being provided the money promised from Eldredge, Florence moved the NBM project forward with his personal resources.

27. That Florence set up a fully equipped office with conference space at his property and expense.

28. That Florence filed for and obtained a patent for his new invention and the ProWell trademark, acquired a Prowell internet domain, designed and developed molds with engineers, negotiated with manufacturers, and engaged industry contacts.

29. That Florence worked with graphic artists and prepared point of purchase, marketing and packaging materials, worked with a professional CFO and wrote a business plan for NBM.

30. That Florence had NBM positioned to commence with manufacturing and marketing Florence's IP.

31. That Eldredge's obligation to help in regards to these and other tasks never materialized.

32. That all the work as planned and intended was for NBM not JT IP and was completed by Florence at his expense.

33. That Eldredge claimed to have an original signed copy of the purported Operating Agreement for JT IP.

34. That Florence never signed the agreement, despite a signed copy being produced in this lawsuit.

35. That Edredge listed Florence as a member even though he knew that their business dealing had concluded.

36. That while there was an assignment executed by Florence to JT IP, it was intended to be a conditional assignment required to be in place for the NBM license.

37. That the intent was to assign only the application while preparing to successfully launch NBM, not any resulting patent.

38. That Florence did not intend for the assignment to be filed unless and until Eldredge satisfied his financial obligations to Florence, and launch NBM, which he never did.

39. That during this time, as Florence worked alone to develop NBM, he also performed part time work and was paid approximately $110,000 as an employee through the payroll for Eldredge's company, Starboard Side Landscaping.

40. That Eldredge failed to satisfy his interest in JT IP.

41. That Florence was assisting Eldredge with his business so that Eldredge could eventually pay what was owed to Florence.

42. That in July of 2018, due to Eldredge's failures to perform on his contractual obligations commitments as well as his insistence on a fifty percent ownership of Florence's patent, Florence told Eldredge he could no longer support the endeavor. He asked Eldredge to meet his commitments or it was time reconcile their accounts to settle and move on.

43. That Florence asked Eldredge to meet his commitments or it was time reconcile their accounts to settle and move on.

44. That in August of 2018, Eldredge told Florence he could not afford to go forward and asked Florence if he could find other resources and reconcile their matters and that to memorialize this parting of their ways, Eldredge gave Florence a check for zero dollars at a meeting in Eldredge's office.

45. That Eldredge and Florence agreed to work out their affairs in the future and remain friends.

46. That on the Commonwealth's registration forms Eldredge falsely named Florence as a member and listed Florence's address as JT IP's business location.

**Defendants' Position**

There are myriad disputed issues of fact, as established by the parties' statements of material fact and responses thereto filed in support of and opposition to their respective motions for summary judgment.

Of import for this trial are the following contested issues:

a. Whether JT IP was an established legal entity?
b. Whether Eldredge or someone at his direction forged Florence's signature on the purported JT IP operating agreement?
c. Whether Florence owed a fiduciary duty to Eldredge and, if so, whether he breached that duty?
d. Whether Eldredge's prior material breach of his obligations to Florence absolved Florence of any duties he may have had to Eldredge?
e. Whether JT IP conferred a benefit upon Defendants?
f. Whether Defendants were unjustly enriched as a result of a benefit conferred upon them by JT IP?
g. Whether Florence made fraudulent misrepresentations to Eldredge?

4. *Jurisdictional Questions*

**Plaintiffs' Positon**

There are no jurisdictional questions.

**Defendants' Position**

There are no jurisdictional questions presently.

Defendants previously argued, however, that the Court should decline to exercise jurisdiction over the state law claims after all federal claims had been dismissed, and in fact should have never been brought in federal court where the Plaintiffs did not have evidence to support them, and moved to dismiss based on subject matter jurisdiction. The Court denied the motion. Defendants wish to expressly preserve this issue for appeal.

5. *Questions Raised by Pending Motions*

**Plaintiffs' Position**

Whether the defendants' expert witness, Ms. Carlson, should be allowed to testify as to the contents of her report, and if so, she should be precluded from testifying as the ultimate conclusion, that is, that Florence did not author the signature ins question.

**Defendants' Position**

1. Whether Plaintiffs should be precluded from introducing a purported operating agreement pursuant to Fed. R. Evid. 1002? See Document 118.

2. Whether Plaintiffs should be precluded from presenting their unjust enrichment claim for failure to establish a necessary element or gain? See Document 119.

3. Whether Plaintiffs should be precluded from certain evidence of alleged misrepresentation/fraud? See Document 120.

4. Whether Plaintiffs should be limited in presenting certain evidence of fraud/misrepresentation? See Document 121.

5. Whether Defendants should be precluded from presenting the ultimate conclusion of authorship regarding Defendants' expert, Wendy Carlson. See Document 129.

6. *Issues of Law*

**Plaintiffs' Position**

Whether, given the judicial admissions in their motion to dismiss (Doc. # 16) the defendants should be allowed to testify or their counsel argue that JT IP was not a valid LLC or that the Operating Agreement at Proposed Trial Exhibit 2 is not the valid operating agreement of JT IP, LLC. Whether the defendants should be able to testify or their attorney argue that the JT IP assignment was for only the patent application, and not the resulting '563 patent.

**Defendants' Position**

Defendants are not aware of any outstanding issues of law at this time.

13

7. *Requested Amendments to Pleadings*

**Plaintiffs' Position**

   None.

**Defendants' Position**

No amendments to the pleadings are requested on behalf of Defendants.

8. *Additional Matters to Aid in Disposition.*

**Plaintiffs' Position**

   The plaintiffs' have no such additional matters.

**Defendants' Position**

Defendants are not aware of any such additional matters at this time.

9. *Probable Length of Trial*

**Plaintiffs' Position**

   One week.

**Defendants' Position**

One week.

10. *Proposed Exhibits*

**Plaintiffs' Position**

   Previously submitted.

**Defendants' Position**

Previously submitted.

11. *Positions on Remaining Objections to Evidence*

**Plaintiffs' Position**

   Previously Submitted.

**Defendants' Position**

    Previously submitted.

Respectfully submitted,

| Plaintiffs, | Defendants, |
|---|---|
| **JT IP, LLC, AND JEFFREY S. ELDREDGE,** | **THOMAS FLORENCE, FLOPACK, LLC AND KIMBERLY PERRY,** |
| By their attorney, | By their attorney, |
| */s/ Douglas F. Hartman* | /s/Mark D. Szal |
| Douglas F. Hartman, BBO# 642823 | Mark D. Szal, BBO# 667594 |
| HARTMAN LAW, P.C. | **SZAL LAW GROUP LLC** |
| 5 East Street | 6 Liberty Square #330 |
| Franklin, MA 02038 | Boston, Massachusetts 02109 |
| P: 617-807-0091 | Tel: (617) 830-2494 |
| dhartman@hartmanlawpc.com | mark@szallawgroup.com |

Dated: July 23, 2025